UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAVID MCCANE

                      Plaintiff,

v.                                                  Civil Action No.: **18-CV-01489**

CORRECTION OFFICERS D. WILKOWSKI,
MASUCCI, T. BUNN, FLINCH, HILLMAN, and
SERGEANT APPLEBERRY,
In Their Individual Capacities,

                      Defendants.

---

**STATEMENT OF MATERIAL FACTS PURSUANT TO
LOCAL RULES OF CIVIL PROCEDURE 7(a)(5) and 56
SUBMITTED BY PLAINTIFF DAVID MCCANE**

      Pursuant to Local Rules of Civil Procedure 7(a)(5) and 56, it is submitted by the moving party, Plaintiff David McCane, that there is no genuine issue to be tried with respect to the following material facts:

      1.    Mr. McCane was under the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at the Gowanda Correctional Facility on January 13, 2018. Robin Declaration ("Robin Decl."), Exhibit C, at 21-22.

      2.    Mr. McCane was transported to the Special Housing Unit ("SHU") at the Gowanda Correctional Facility, also known as the "box." Robin Decl., Exhibit P, at 9; *see also* Robin Decl., Exhibit F, at 10.

      3.    Prior to admission to the SHU, every inmate is subject to an admission process in which inmates are frisked and searched. This process involves the use of a Body Orifice Scanning System ("B.O.S.S."), a strip frisk of the inmate, and a search of the inmate's

body cavities, including the mouth and anus. Robin Decl, Exhibit E, at 13; *see also* Robin Decl, Exhibit D, at 28.

   4. At approximately 7:00 P.M., Mr. McCane arrived at the SHU for admission and was escorted into the strip frisk room. This room, as demonstrated by the video footage capturing this incident, is approximately fifteen feet by fifteen feet. The area in which the strip frisk occurs is enclosed by a privacy wall, approximately four and a half feet wide and four feet tall, which is designed to obscure the view of the inmate's genitals and lower body during the strip search. Robin Decl., Exhibit B, at 9; *see generally* Exhibit K.

   5. The SHU admissions process requires that an officer film the strip frisk, place the video camera on a tripod pointed toward the inmate, and leave the area before the strip search begins. Robin Decl., Exhibit F, at 11-12; Exhibit B, at 9.

   6. In this case, defendant Bunn was responsible for filming Mr. McCane's strip search. Following the use of the B.O.S.S. chair, defendant Bunn placed the camera on a tripod located in front of the privacy wall, capturing only the top half of Mr. McCane's body during the strip search. This video camera captured the entire incident, from the moment Mr. McCane entered the strip frisk room, to the moment he was escorted out following the use of force. *See* Robin Decl., Exhibit K, at 01:08.

   7. Mr. McCane was wearing a green jacket and was handcuffed. *Id.*

   8. Defendant Wilkowski performed a B.O.S.S. chair examination. He instructed Mr. McCane, "Sit down, kid. It's not hard." Defendant Wilkowski ordered Mr. McCane to lift his handcuffed hands while sitting in the B.O.S.S. chair. Defendant Wilkowski then ordered Mr. McCane to slide back in the chair. Mr. McCane complied with all three orders. *Id.* at 00:40-01:05.

2

9. Defendant Wilkowski escorted Mr. McCane to the strip frisk area. At this point, defendants Wilkowski, Masucci, and Bunn—along with Sergeant Daniel Dennis—were present in the strip frisk room. *Id.* at 01:05.

10. Prior to beginning the strip frisk, defendant Wilkowski told Mr. McCane that he must obey all orders and not turn around unless ordered to do so. Defendant Wilkowski told Mr. McCane that he will be "dealt with accordingly" if he were to turn around at any point during this search unless ordered. Mr. McCane communicated that he understood. *Id.* at 01:15-01:26.

11. Defendant Wilkowski ordered Mr. McCane to face the wall. Defendant Wilkowski then uncuffed Mr. McCane and ordered Mr. McCane to place his left hand on the wall. Mr. McCane complied, but defendant Wilkowski believed Mr. McCane did not place his left hand high enough and subsequently grabbed his left hand and placed it higher on the wall. Defendant Wilkowski, after completely removing the handcuffs from Mr. McCane, then ordered Mr. McCane to place his right hand on the wall. Mr. McCane complied. *Id.* at 01:34-01:48.

12. Defendant Wilkowski ordered Mr. McCane to move his feet away from the wall. Mr. McCane complied. *Id.* at 01:50.

13. Defendant Wilkowski proceeded to frisk Mr. McCane and used a metal-detecting wand while Mr. McCane was against the wall. *Id.* at 01:56-02:29.

14. Defendant Wilkowski then informed Mr. McCane of the "position of non-aggression," which is to keep his left hand grasping his right wrist behind his back. He instructed Mr. McCane that he is to return to this position after he removes each article of clothing. Mr. McCane communicated that he understood. *Id.* at 02:35-02:52.

15. Defendant Wilkowski then explained to Mr. McCane that he is to move his clothing, one article at a time, handing each article to defendant Wilkowski, and then returning to the position of non-aggression. *Id.* at 02:43-02:53.

16. Mr. McCane proceeded to remove his jacket, a shirt, an undershirt, a t-shirt, his sneakers, his long-john pants, and his pants. After he removed each article and handed it to defendant Wilkowski, Mr. McCane returned to the position of non-aggression. *Id.* at 02:55-04:05.

17. Mr. McCane asked defendant Wilkowski if he may ask a question, to which defendant Wilkowski responded, "No, not now. When we're done." Defendant Wilkowski repeated that if Mr. McCane turns around without an order that he will be "dealt with accordingly."

18. Defendant Wilkowski ordered Mr. McCane to turn around, open his mouth, lift his tongue, take his finger, and run it between his lips and gum. He complied. Unsatisfied with Mr. McCane's swabbing, Defendant Wilkowski ordered that Mr. McCane swab his mouth again. Mr. McCane complied. *Id.* at 04:11-04:24.

19. Defendant Wilkowski ordered that Mr. McCane lift his hands. He complied. *Id.* at 04:24-04:26.

20. Defendant Wilkowski ordered that Mr. McCane lower his hands, with his palms parallel to and facing the ground. He complied. *Id.* at 04:30.

21. Defendant Wilkowski ordered that Mr. McCane flip his hands over, this time with his palms facing the ceiling. He complied. *Id.* at 04:31-04:33.

22. Defendant Wilkowski ordered that Mr. McCane reveal the back of his ears by turning his head and folding his ear inward. He complied. *Id.* at 04:34-04:36.

23. Defendant Wilkowski ordered that Mr. McCane turn around. He complied. *Id.* at 04:38.

24. Defendant Wilkowski ordered that Mr. McCane remove his socks, turn them inside out, and then hand them to him. He complied and returned to the position of non-aggression as ordered. *Id.* at 04:44-04:56.

25. Defendant Wilkowski ordered that Mr. McCane remove his underwear. He complied and returned to the position of non-aggression. *Id.* at 04:57-05:02.

26. Defendant Wilkowski ordered that Mr. McCane turn around and face the officers. He complied. *Id.* at 05:08.

27. At this point, Mr. McCane said, "I'm not a little kid, stop talking to me like one. I'm not a little kid." Defendant Wilkowski responded, "then answer me like a man." *Id.* at 05:10-05:14.

28. Defendant Wilkowski ordered Mr. McCane to unclasp his hands, lift his penis, and separate his genitals. Mr. McCane complies. *Id.* at 05:14-05:19.

29. Defendant Wilkowski ordered Mr. McCane to turn around. At the same time, Mr. McCane recognized defendant Masucci behind defendant Wilkowski and said, "Masucci?" Defendant Wilkowski ordered Mr. McCane again to turn around and face the wall. This exchange occurred over three seconds. *Id.* at 05:19-05:22.

30. As Mr. McCane turned around and assumed the position of non-aggression, defendant Wilkowski ordered Mr. McCane to turn around as he drove Mr. McCane into the wall with his right forearm against Mr. McCane's back. *Id.* at 05:24-05:25.

31. This caused Mr. McCane's face to strike the wall he was facing. *Id.*

5

32. The force with which defendant Wilkowski drove Mr. McCane into the wall caused Mr. McCane's teeth to chip the paint on the concrete wall. *Id.* at 05:24.

33. Defendant Wilkowski used a "half-nelson" to pin Mr. McCane against the wall. *Id.* at 05:24-05:27.

34. At this point, defendant Bunn came into view of the camera. *Id.* at 05:27; *see also* Robin Decl., Exhibit D, at 38.

35. Defendant Masucci entered the frisking area, lowered himself, and proceeded to pull Mr. McCane's legs out from under him, causing him to fall onto the floor. Robin Decl., Exhibit K, at 05:26-05:29.

36. Sergeant Dennis entered the frisking area and stood above the officers and Mr. McCane. *Id.* at 05:41; *see also* Robin Decl., Exhibit D, at 38.

37. Defendants Masucci and Bunn grabbed Mr. McCane and brought him to his feet. Robin Decl., Exhibit K, at 06:36-06:45.

38. As soon as defendants Masucci and Bunn brought Mr. McCane to his feet, Mr. McCane spat blood from his mouth onto the floor. *Id.* at 06:41-06:42.

39. Defendant Wilkowski asked Sergeant Dennis, "Bring him back?" Sergeant Dennis responded, "Yup." *Id.* at 07:00-07:03.

40. Although the officers removed Mr. McCane from the frisking room and escorted him to his room, the search of Mr. McCane was incomplete. *See* Robin Decl., Exhibit E, at 57.

41. As a result of this use of force, Mr. McCane sustained multiple injuries to his face, specifically injuries to his mouth, teeth, jaw, and left eye socket.

42. Dr. Paula Bozer, a physician for DOCCS, testified that the eye socket fracture in this incident is known as a "blow-out" fracture, which is typically the result of a blunt injury to the orbital; that a punch or a kick is consistent with the blunt force required to cause such a fracture; and that Mr. McCane's injuries were not minor. Robin Decl., Exhibit B, at 12-13.

43. Defendants Masucci and Wilkowski prepared the Use of Force Staff Memoranda immediately following this incident on January 13, 2018. Robin Decl., Exhibits M and N.

44. In defendant Masucci's memorandum, he stated that Mr. McCane was "being very defiant toward staff" throughout the entire admission process. His memorandum notably failed to mention any use of force on his part, and that Mr. McCane sustained multiple injuries to his face. *See* Robin Decl., Exhibit M.

45. In defendant Wilkowski's Use of Force Staff Memorandum, he stated that Mr. McCane "was uncooperative and did not follow directions." In addition, defendant Wilkowski also stated that at the moment he used force, Mr. McCane "unlocked his left hand from his right wrist making fists" and "[h]is right foot continued to turn to the right as to spin around towards me." *See* Robin Decl., Exhibit N.

46. Defendant Masucci also endorsed an Inmate Misbehavior Report prepared by defendant Wilkowski which states that Mr. McCane "was very uncooperative and did not follow [several direct orders]." It also stated that, at the time of the use of force, Mr. McCane "unlocked his hands making fists and tried to turn around." *See id.*

47. As a result of this incident, Mr. McCane filed a grievance alleging that he was assaulted by defendants unjustifiably and that as a result of the assault, he sustained two cracked teeth, a fractured left eye socket, and a split tongue. Robin Decl., Exhibit A.

48. Mr. McCane's grievance prompted an investigation by the Office of Special Investigations ("OSI"). *See id.*[1]

49. On January 19, 2018, defendants Wilkowski, Masucci, and Bunn were "locked out" from the Gowanda Correctional Facility, meaning they were barred from accessing the facility without permission from either the Superintendent or her designee. In other words, these officers were placed on administrative leave, pending investigation by OSI. Robin Decl., Exhibit O at 2.

50. The stated reason for suspending Masucci was "[his] use of unnecessary and/or excessive physical force resulting in serious physical injury to an inmate on January 13, 2018." Robin Decl, Exhibit Q.

51. On January 23, 2018, OSI investigators John Ginnitti and Christopher Tirado interviewed and questioned defendant Masucci regarding the use of force on January 13, 2018. *See* Robin Decl., Exhibit O.

52. On February 6, 2018, the Director of Labor Relations of DOCCS, John Shipley, issued a Notice of Discipline in which defendant Masucci was dismissed from service and lost any accrued annual leave. *See* Robin Decl, Exhibit L.

---

[1] The grievance was referred to the Office of Special Investigations (OSI) "in accordance with Directive #4040, 701.8 (d)(2)."

53. On February 6, 2018, defendant Wilkowski received a Notice of Discipline similarly dismissing him from service and removing any accrued annual leave. *See* Robin Decl., Exhibit Y.

54. On February 8, 2018, defendant Masucci filed a grievance in response to DOCCS' Notice of Discipline, seeking "dismissal of all charges and penalty sought." *See* Robin Decl., Exhibit W.

55. On November 1, 2018, and November 7-8, 2018, Timothy Taylor, Esq., the arbitrator tasked with adjudicating defendant Masucci's grievance against DOCCS, held hearings. He rendered an Opinion and Award on January 30, 2019. *See* Robin Decl., Exhibit B.

56. In Mr. Taylor's Opinion, he found that defendant Masucci used excessive force. In support of his conclusion, he stated that defendant Masucci's use of a Corrections Emergency Response Team ("CERT") technique was "improper and unnecessary." Furthermore, Mr. Taylor found, based on the video footage, that there was no danger to the staff at the time defendant Masucci pulled Mr. McCane's legs out from under him. He concluded that "unnecessary force is excessive force." *Id.* at 21.

57. Mr. Taylor also found that defendant Masucci's statements in his Use of Force Staff Memorandum contained material omissions and mischaracterizations which were inaccurate and misled the State. Specifically, defendant Masucci "omitted the actions of [defendant] Bunn," "minimized the force [defendant] Wilkowski used while exaggerating [Mr. McCane's actions to portray [him] as defiant and challenging," and "most important, . . . fail[ed] to disclose the amount [of] force he used." *Id.* at 22.

58. Finally, Mr. Taylor found that defendant Masucci gave a false and misleading statement to OSI investigators when he stated that the strip search and frisk pursuant

to SHU admission procedure was completed following the use-of-force incident, when in fact two searches remained—the officers had yet to search Mr. McCane's anus and the bottom of his feet. *Id.* at 24.

59. Significantly, Mr. Taylor noted the testimony of OSI Special Investigator John Ginnitti, who had also served as a DOCCS-certified use-of-force instructor. Mr. Ginnitti testified that the actions of defendants Masucci, Wilkowski, and Bunn were "unnecessary and excessive." *Id.* at 15.[2]

60. In addition, Gowanda Correctional Facility Deputy Superintendent testified that, based on the video footage capturing the incident, defendant Masucci's use of force was "excessive and unwarranted." *Id.* at 15.

61. Despite his involvement in the incident, defendant Wilkowski testified that other officers "believe[d] that the use of force was inappropriate." He was referring to defendant Masucci's use of the CERT technique in which he grabbed Mr. McCane's legs and pulled them. He felt that what defendant Masucci did was "wrong."[3] Robin Decl., Exhibit E, at 74-75.

---

[2] "In [Ginnitti's] opinion, Inmate McCane was obeying an order when Wilkowski first used force. The force he used was unnecessary and excessive. While the inmate was securely held against the wall and was under control, the inmate should have been handcuffed. The actions of [Masucci] and CO Bunn in bringing the inmate to the floor were unnecessary and excessive." Robin Decl., Exhibit B, at 15.

[3] Defendant Wilkowski testified:
Q: You said that you know that day you guys, everybody in the room realized something was wrong, what do you mean by that?
A: We believe that use of force was inappropriate.
Q: When you say use of force you meant what Officer Masucci used?
A: Yes.
Q: Who did you talk about that with?
A: It's been a long time but I'm pretty sure I talked to everybody that was in that room about it.
Q: Did you talk to Officer Masucci that you felt what he did was wrong?
A: Yeah.
Robin Decl., Exhibit E, at 74-75.

62. As a result of the defendants' use of force, Mr. McCane sustained the following dental injuries (Robin Decl., Exhibit U, at 5-8):

    a. Severe infections ("large carious lesions") in teeth nos. 3, 7, and 14, requiring root canals in the future; and if those root canal procedures are unsuccessful, then Mr. McCane will require dental implants and partial upper dentures.

    b. Fractured central incisors, namely teeth nos. 8 and 9, which will require crowns or veneers; and if these teeth become symptomatic, then they will require root canals, posts, and/or crowns.

    c. Potential infection of tooth no. 8, which will likely require a root canal or replacement, due to the infection from tooth no. 7 spreading to tooth no. 8.

    d. Fractured teeth nos. 1, 2, 12, and 13, all of which have been removed.

    e. Significant injury and malalignment of the jaw related to a TMJ injury, exacerbated by missing and infected teeth.

    f. Inability to properly masticate or chew food due to missing teeth and TMJ pain, which increases the risk of further tooth loss and/or infection.

    g. TMJ pain causing chronic headaches on the left side of Mr. McCane's head.

63. As a result of defendants' use of force, Mr. McCane sustained the following maxillofacial and eye injuries (Robin Decl., Exhibit S, at 3-6; Exhibit V, at 5):

    a. Two fractures of Mr. McCane's left orbital bones:

11

    i. A fracture of his left orbital floor bone; and

    ii. A fracture of his left lamina papyracea.

  b. An injury to his left medial rectus muscle, one of six muscles responsible for movement in his left eye;

  c. Blurry and double vision (monocular diplopia) due to injury to his left medial rectus muscle causing a misalignment of his eyes;

  d. Dry eye;

  e. Eye twitching;

  f. Photophobia; and

  g. Chronic headaches stemming from the injuries to his left eye.

64. The reports of Plaintiff's experts explain that *all* of Mr. McCane's injuries are attributable to defendants' use of force and are consistent with the events depicted in the attached video footage. *See* Robin Decl., Exhibit T, at 4; Exhibit U, at 8; Exhibit V, at 5.

65. As a result of these injuries, Mr. McCane is expected to incur in excess of $65,000.00 in future medical/dental expenses. *See* Robin Decl., Exhibit U, at 9.


Dated: April 18, 2023
   New York, New York

                    _____
                    Caitlin Robin, Esq.
                    CAITLIN ROBIN & ASSOCIATES, PLLC
                    *Attorneys for Plaintiff, David McCane*
                    30 Broad Street, Suite 702
                    New York, New York 10004
                    (646) 524-6026
                    caitlin@robinandassociates.com