UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAVID MCCANE

Plaintiff,

v.

Civil Action No.: **18-CV-01489**

CORRECTION OFFICERS D. WILKOWSKI,
MASUCCI, T. BUNN, FLINCH, HILLMAN, and
SERGEANT APPLEBERRY,
In Their Individual Capacities,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**CAITLIN ROBIN AND ASSOCIATES PLLC**
*Attorneys for Plaintiff, David McCane*
30 Broad Street, Suite 702
New York, New York 10004
(646) 524-6026
caitlin@robinandassociates.com

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL AND PROCEDURAL HISTORY ............................................................ 1

SUMMARY JUDGMENT STANDARD ................................................................... 1

ARGUMENT .............................................................................................................. 3

    GOWANDA CORRECTIONAL OFFICERS VIOLATED MR. MCCANE'S EIGHTH
    AMENDMENT RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT WHEN
    THEY USED EXCESSIVE FORCE AGAINST HIM WITHOUT JUSTIFICATION ............ 3

        A.    Mr. McCane's injuries were objectively, sufficiently serious. .................................... 5

        B.    Defendants possessed a sufficiently culpable state of mind when they used a
            disproportionate amount of force against Mr. McCane without justification ............... 9

    DEFENDANTS WILKOWSKI, BUNN, AND MASUCCI VIOLATED MR.
    MCCANE'S EIGHTH AMENDMENT RIGHT AGAINST EXCESSIVE FORCE
    WHEN THEY FAILED TO INTERVENE IN THEIR RESPECTIVE USES OF FORCE .... 16

        A.    Defendant Masucci had a duty to intervene against defendant Wilkowski's use
            of excessive force and disregarded that use of force by failing to take reasonable
            measures to end the use of excessive force .................................................................. 17

        B.    Defendant Wilkowski had a duty to intervene against defendant Masucci's use
            of excessive force and disregarded that use of force by failing to take reasonable
            measures to end the use of excessive force .................................................................. 17

        C.    Defendant Bunn had a duty to intervene against defendant Masucci's use of
            excessive force and disregarded that use of force by failing to take reasonable
            measures to end the use of excessive force .................................................................. 18

CONCLUSION ............................................................................................................ 19

## TABLE OF AUTHORITIES

*Anderson v. Branen*, 14 F.3d 552 (2d Cir. 1994) .......................................................... 16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................... 2

*Boddie v. Schnieder*, 105 F.3d 857 (2d Cir. 1997) ........................................................ 4

*Casiano v. Ashley*, 515 F.Supp.3d 19 (W.D.N.Y. 2021) ............................................... 4

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................. 1

*Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001) ............................................. 16

*Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423 (2d Cir. 2001) ................................... 3

*Green v. Morse*, 2009 WL 1401642 (W.D.N.Y. May 18, 2009) ................................... 3

*Griffin v. Crippen*, 193 F.3d 89 (2d Cir. 1999) ............................................................. 4

*Helling v. McKinney*, 509 U.S. 25 (1993) ...................................................................... 4

*Hudson v. McMillian*, 503 U.S. 1 (1992) ....................................................................... 4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..................... 2

*Newland v. Achute*, 932 F.Supp. 529 (S.D.N.Y. 1996) ................................................. 5

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) ..................................................................... 2

*Rhodes v. Chapman*, 452 U.S. 337 (1981) ..................................................................... 3

*Romano v. Howarth*, 998 F.2d 101 (2d Cir. 1993) ........................................................ 4

*Scott v. Harris*, 550 U.S. 372 (2007) ............................................................................. 2

*United States v. Walsh*, 194 F.3d 37 (2d Cir. 1999) ...................................................... 4

*Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118 (2d Cir. 1990) ........................ 2

*Wright v. Goord*, 554 F.3d 255 (2d Cir. 2009) .............................................................. 4

*Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. 2007) ....................................................... 2

## PRELIMINARY STATEMENT

1.      Plaintiff submits this memorandum of law in support of his motion for

summary judgment for excessive force and failure to intervene against defendants Douglas

Wilkowski, Timothy Bunn, and Constantino Masucci. For the reasons discussed below, this

Court should grant Plaintiff's motion for summary judgment in its entirety.

## FACTUAL AND PROCEDURAL HISTORY

2.      For the convenience of this Court, Plaintiff respectfully directs its

attention to the Sworn Declaration of Counsel for Mr. McCane, Caitlin Robin ("Robin Decl."),

with exhibits, and the accompanying Statement of Material Facts submitted pursuant to Local

Rule 56.1 ("SOF"), for a full narrative of the factual and procedural background relevant to

Plaintiff's motion.

## SUMMARY JUDGMENT STANDARD

3.      Summary judgment is appropriate where the admissible evidence shows

that there is no genuine issue of material fact and that the moving party is entitled to summary

judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-

23 (1986).  As the moving party, Plaintiff has the burden of demonstrating the absence of a

genuine issue of material fact.  *Celotex*, 477 U.S. at 322-23.  Plaintiff can meet this burden by

presenting evidence showing that there is no dispute of material fact, or by showing that the non-

moving party has failed to present evidence in support of some element of its case on which it

bears the ultimate burden of proof.  *Id*. at 322-23.  Indeed, one of the principal purposes of

summary judgment is to identify and dispose of factually unsupported claims and defenses.  *Id*.

at 323-24.

4.      Once the moving party has met his burden, to avoid summary judgment the non-moving party "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, through admissible evidence, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal citations and quotations omitted); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) ("the non-movant must set forth specific facts showing that there is a genuine issue for trial").

5.      When evaluating a summary judgment motion, a fact is "material" only if it "might affect the outcome of the suit under governing law . . . [f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Where, as here, there are two conflicting versions of the facts, Defendants cannot create a dispute of material fact where their version is discredited by the objective evidence in the record and no reasonable jury could believe them.  *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007).  This often occurs where there is video footage of the incident that completely contradicts testimony relied on by the non-moving party.  *Id.*; *see, e.g., Plumhoff v. Rickard*, 572 U.S. 765, 775-76 (2014) (expanding *Scott* and holding that video footage in addition to other objective evidence in the record conclusively disproved one party's version of the events so that no reasonable jury could have believed him); *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007) ("[i]ncontrovertible evidence relied on by the moving party, such as a relevant videotape whose accuracy is unchallenged, should be credited by the court on such a motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party"); *Green v. Morse*, No. 00-CV-6533, 2009 WL 1401642, at *9

(W.D.N.Y. May 18, 2009) (Siragusa, D.J.) ("[b]ased upon *Scott*, as well as Judge Larimer's opinion in *Allaway*, and the cases upon which he relies, the Court concludes that it may reasonably rely on the video evidence presented in this case in deciding whether to grant summary judgment on Plaintiff's use of force claim").

6.      Similarly, although all ambiguities and reasonable inferences must be resolved in favor of the non-movant, this Court "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001); *Western World Ins.*, 922 F.2d at 121 (concluding that the non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts or defeat the motion through "mere speculation or conjecture").  In determining whether summary judgment is appropriate, it is settled that the "mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient."  *Anderson*, 477 U.S. at 248.  The central issue this Court must decide is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*. at 251-52.

## **ARGUMENT**

### **GOWANDA CORRECTIONAL OFFICERS VIOLATED MR. MCCANE'S EIGHTH AMENDMENT RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT WHEN THEY USED EXCESSIVE FORCE AGAINST HIM WITHOUT JUSTIFICATION**

7.      Defendants Wilkowski, Bunn, and Masucci used excessive force against Mr. McCane when they pinned him against the wall, face first, and brought him to the ground by pulling his legs out from under him. The Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it

is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment's prohibition against cruel and unusual punishment includes by extension a prohibition against the use of excessive force on a prisoner. *Casiano v. Ashley*, 515 F.Supp.3d 19, 24-25 (W.D.N.Y. 2021) (holding that a claim of excessive force involving the use of force against a prisoner is governed by the Eighth Amendment).

8.     The standard governing excessive force claims under the Eighth Amendment have two components: First, the alleged punishment must be "objectively, sufficiently serious." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 [1994]). This element is context specific and turns upon "contemporary standards of decency." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (internal citations omitted); *see also Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) (noting that an Eighth Amendment excessive force claim is "context specific, turning upon contemporary standards of decency"). Although "some degree of injury is ordinarily required to state a claim of excessive use of force in violation of the Eighth Amendment," an inmate "need not prove 'significant injury' to make out an excessive force claim." *See United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999); *Griffin*, 193 F.3d at 92. Although courts have held that "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), courts have also stated that, "in the excessive force context, there is essentially strict liability." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). In other words, "[w]hen prison officials maliciously or sadistically use force to cause harm, contemporary standards of decency always are violated." *Id.*

4

9.     Second, the prison official involved must have a "sufficiently culpable state of mind." A sufficiently culpable state of mind for an Eighth Amendment claim alleging excessive use of force turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." *Newland v. Achute*, 932 F.Supp. 529, 534 (S.D.N.Y. 1996) (internal citations omitted). Stated differently, the subjective element requires a showing that the prison official "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." *Wright*, 554 F.3d at 268. This inquiry is "a test about necessity, intent, effect, and proportionality," and a court must examine "the extent of the injury; the mental state of the Defendant; 'the need for the application of force'; the correlation between that need and the amount of the force used; the threat reasonably perceived by the Defendants, and any efforts made by the Defendants to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7.

### A.     Mr. McCane's injuries were objectively, sufficiently serious.

10.     In this case, Defendants had no justification to use such force when they pinned Mr. McCane against the wall, pulled his legs causing him to fall to the ground, and piled on top of him, resulting in multiple fractured teeth and a fractured left eye socket, along with related sequelae. Mr. McCane was compliant throughout the entire SHU admission process, acknowledging and communicating that he understood the direct orders of defendants Wilkowski and Masucci. In fact, at every point when defendant Wilkowski asked Mr. McCane if he understood his orders, he responded in the affirmative. When ordered to sit down on the B.O.S.S. chair, Mr. McCane complied; when ordered to raise his handcuffed hands higher behind his back during the B.O.S.S. chair procedure, Mr. McCane complied; when ordered to assume a position of non-aggression after he removed each article of clothing, Mr. McCane complied; when

ordered to face the wall, place his hands on the wall, and move his feet back toward defendant Wilkowski for a pat down, Mr. McCane complied; when ordered to swab between his gums and lips with his finger to show defendants every corner of his mouth, Mr. McCane complied; when ordered to fold his ears inward to show defendants the areas behind his ears, Mr. McCane complied; and when ordered to turn around and face defendants, he complied. At no point did Mr. McCane manifest an intention or desire to disobey the direct orders of the defendants. As evidenced by the video footage captured pursuant to the SHU admission process, Mr. McCane was calm and obedient in his demeanor toward the defendants.

11.     Defendants' use of force against Mr. McCane violated contemporary standards of decency because Mr. McCane was completely compliant with defendants' orders, making defendants' response egregiously disproportionate in light of the injuries Mr. McCane sustained. As explained below, Plaintiff's experts testified that Mr. McCane has incurred and will continue to incur medical costs for the injuries to his teeth, mouth, face, and eye. The medical assessment Mr. McCane received was consistent with a finding and conclusion that defendants used an amount of force that any reasonable juror would find repugnant. Thus, it is clear the injuries sustained by Mr. McCane were not *de minimis* and were sufficiently serious to warrant summary judgment under the Eighth Amendment.

### i.     The use of force caused two fractures within Mr. McCane's left eye socket, and the trauma to his left eye caused photophobia, double vision, twitching, and dry eye.

12.     As a result of the use of excessive force against Mr. McCane, Mr. McCane sustained multiple, lasting injuries to his left eye. According to Dr. Daniel A. Klapper, an ophthalmologist who reviewed Mr. McCane's medical records and personally evaluated Mr. McCane, Mr. McCane suffered (1) a fracture to his left eye lamina papyracea; (2) a fracture to

his left eye orbital floor; (3) an injury to his medial rectus muscle, one of six muscles responsible for eye movement. Robin Decl., Exhibit S, p. 5. In addition, as a result of the trauma, Mr. McCane suffers from chronic headaches on the left side of his head, sensitivity to bright light, blurry vision, double vision (monocular diplopia), dry eye, and twitching. Robin Decl., Exhibit I, pp. 21, 41, 61. It is Dr. Klapper's opinion, within a reasonable degree of medical certainty and as stated in his Expert Disclosure and his deposition testimony, that these injuries are causally related to defendants' use of force. Robin Decl., Exhibit I, pp. 36-40; Exhibit S, p. 6. Dr. Klapper stated that these injuries are consistent with blunt force trauma—specifically, the trauma captured on the video footage, *see* Robin Decl., Exhibit I, pp. 36-40—and that, in his Supplemental Expert Disclosure, Mr. McCane's vision not only worsened but also that further testing performed on November 27, 2021, and December 27, 2021, confirmed Mr. McCane's complaints of blurry and/or double vision in his left eye are attributable to the January 13, 2018 incident. Robin Decl., Exhibit T. According to Dr. Klapper, the enlargement of Mr. McCane's optic nerve will require further neurologic consultation. *Id.*

13.     Dr. Michael J. Persky, an otolaryngologist who reviewed Mr. McCane's medical records, similarly concluded that, within a reasonable degree of medical certainty, Mr. McCane's injuries are attributable to defendants' use of force. *See* Robin Decl., Exhibit V, p. 5. Dr. Persky in his deposition discussed how injuries to Mr. McCane's tongue, his trismus (a difficulty in opening the jaw) and swelling/tenderness in his jaw and left orbital area were all caused by defendants' use of force. Robin Decl., Exhibit H, pp. 46-48. Further, he stated that Mr. McCane developed substantial scar tissue on his tongue because of the use-of-force incident, and that his inability to open his jaw fully was due to the blunt force trauma Mr. McCane experienced at the time of the incident. *Id.* at p. 50, 55; *see also* Robin Decl., Exhibit H, p. 5.

7

Like Dr. Klapper, Dr. Persky believed Mr. McCane's fractures to his left eye socket were caused directly by the defendants' use of force. *See* Robin Decl., Exhibit H, pp. 4-5.

> **ii.    The use of force caused multiple fractured teeth, infections, and the need for approximately $65,000 of future dental treatment.**

14.    Dr. Adina Carrel conducted an expert review of Mr. McCane's medical documentation and conducted an evaluation of Mr. McCane's teeth and mouth. She concluded that defendants caused four of Mr. McCane's teeth to fracture. Robin Decl., Exhibit U, p. 8. As a result of defendants' use of force, Mr. McCane now presents three teeth in need of future root canals, as evidenced by "periapical radiolucenc[ies]" and "large carious lesions" in teeth nos. #3, #7, and 14. *Id.* at pp. 5-6. In other words, three of Mr. McCane's teeth became seriously infected after defendants' use of force. *See id.* at p. 8. According to her deposition testimony, she explained that the need for root canals in these three teeth was due to the widespread mobility of teeth in Mr. McCane's "upper arch" and a fractured molar; and that trauma related to defendants' use of force caused this mobility. Robin Decl., Exhibit G, pp. 67-69.

15.    Significantly, Mr. McCane began having difficulty with opening his jaw fully and chewing. Dr. Carrel noted that Mr. McCane was experiencing clicking and popping from his temporomandibular joint (TMJ), as well as pain and headaches stemming from the left side of his TMJ. Robin Decl., Exhibit G, p. 24. Because defendants caused four of Mr. McCane's front and back teeth to break, Mr. McCane could not chew with his molars and instead had to chew food primarily with his front teeth. Robin Decl., Exhibit G, pp. 69-71. According to Dr. Carrel, chewing with one's front teeth not only aggravated his mouth pain but also made him more susceptible to infection in the front teeth which had loosened such that he would require root canals. Robin Decl., Exhibit G, pp. 72-74. As a result, he is at risk for further loss of teeth

and has already lost four teeth in his upper arch. Dr. Carrel believes that Mr. McCane's tooth no. #8 is at risk of requiring a root canal in the future as well. Robin Decl., Exhibit G, p. 75.

16.   As a direct result of defendants' use of force, Mr. McCane now faces a lifetime of future dental treatment, totaling an estimated $65,000.00 to cover the costs of a partial upper denture, replacement dentures every five years, root canals for the three (perhaps four) teeth that are currently infected, and eight new crowns. Robin Decl., Exhibit U, pp. 8-9. Moreover, Mr. McCane will require dental implants should any root canal procedures fail, which Dr. Carrel stated is possible since root canal procedures "are not 100% successful," Robin Decl., Exhibit G, p. 65, and that teeth that do not respond well to a root canal must be removed. *Id.* at 66.

### B.   Defendants possessed a sufficiently culpable state of mind when they used a disproportionate amount of force against Mr. McCane without justification.

17.   As stated above, "in the excessive force context, there is essentially strict liability." *Hudson*, 503 U.S. at 9. Thus, when prison officials use force with a malicious or sadistic state of mind resulting in a sufficiently serious injury, they are always violating a prisoner's Eighth Amendment right against the use of excessive force.

18.   Defendants possessed a sufficiently culpable state of mind in this case because (1) the use of force was not a good faith effort to restore or maintain discipline and was unnecessary, given Mr. McCane's complete compliance and demeanor toward the officers; (2) because Mr. McCane did not manifest any intention to disobey or hurt the defendants, such a use of force could not have been employed for the sake of officer safety; (3) because the use of force in this instance was egregiously disproportionate to what was required, as evidenced by multiple qualified state officials concluding that the use of force here was unnecessary and excessive; (4)

because Mr. McCane suffered severe injuries, including a fractured left eye socket and two

fractured incisors; and (5) because defendants made no effort to temper the severity of a forceful

response. Defendant Wilkowski did the opposite. There were multiple instances in which

defendant Wilkowski repeated orders before Mr. McCane had the opportunity to comply or

otherwise follow them, most notably at the moment leading up to the use of force in this case. It

is clear based on the video footage of the search that defendants Wilkowski and Masucci made

no efforts to temper the severity of a forceful response. For reasons discussed below, neither

Wilkowski nor Masucci can justify their conduct by claiming their conduct advanced a

legitimate penological purpose or promoted officer safety.

> **i.    Defendant Wilkowski possessed a sufficiently culpable state of mind when he slammed Mr. McCane against the wall without proper justification and by using a disproportionate amount of force.**

19.     Defendant Wilkowski's use of force was unnecessary and

disproportionate. Defendant Wilkowski maintains that his use of force was appropriate because

Mr. McCane was uncooperative throughout the strip search process. Specifically, he claimed that

Mr. McCane was uncooperative "[w]ith the B.O.S.S. chair and then just before everything

happened, *yelling* at Masucci, looking around the room. And then creating the fist that ended it

all is uncooperative. . . ." Robin Decl., Exhibit E, at 62 (emphasis added). With regard to his

testimony that Mr. McCane posed a threat to the officers, Defendant Wilkowski testified that Mr.

McCane "unlocked his left hand from his right wrist making a fist" and that "[h]is right foot

continued to turn to the right and to spin around toward me." *Id.* However, the video footage

shows that, at the moment preceding the use of force, Mr. McCane was facing defendant

Wilkowski with his hands unlocked pursuant to defendant Wilkowski's order to separate his

genitals. Robin Decl., Exhibit K, at 05:23. To the extent Mr. McCane moved before the use of

force, he began turning toward the wall in a clear effort to comply with defendant Wilkowski's order to face the wall and assume the position of non-aggression. *Id.* It should be noted that, before this order, Mr. McCane always assumed the position of non-aggression when ordered to change his orientation. SOF ¶¶ 8-30. Because he was in the process of facing the wall, Mr. McCane was clearly turning *away* from defendant Wilkowski, not toward him. Mr. McCane had no occasion to spin toward his right while facing the wall because he was immediately brought to the ground by defendant Masucci. *See* Robin Decl., Exhibit K, at 05:27. Therefore, defendant Wilkowski's assertion that Mr. McCane posed a threat to him and defendant Masucci is disproven by objective, video evidence, and no reasonable jury could believe defendant Wilkowski's claim that Mr. McCane's alleged noncompliance and violence justified his use of force. Lastly, Mr. McCane never raised his voice at either defendant Wilkowski or defendant Masucci. *See generally* Robin Decl., Exhibit K.

20.     In addition to defendant Wilkowski's contradictory testimony, defendant Wilkowski's post-use-of-force documentation is similarly inconsistent with the video footage, further showing a lack of necessity and malintent for his use of force. First, in the Use of Force Memorandum he drafted, defendant Wilkowski described Mr. McCane as "uncooperative" and posing a threat because he unlocked his hands, formed fists, and tried to spin around to attack the officers. Robin Decl., Exhibit M. The video footage makes clear that Mr. McCane was very cooperative and made no moves to suggest that he was a threat to any of the officers. *See generally* Robin Decl., Exhibit K. Defendant Wilkowski's Notice of Discipline, issued after an investigation by OSI, confirmed that defendant Wilkowski (1) failed to accurately report the reason for the use of force, (2) the amount of force used, and (3) any injuries the inmate sustained. Robin Decl., Exhibit Y. In his deposition testimony, defendant Wilkowski stated he

observed blood and teeth fragments on the floor from Mr. McCane's mouth as soon as the officers assisted Mr. McCane to his feet. Robin Decl., Exhibit E, at 51. However, in his Use of Force Memorandum, defendant Wilkowski made no mention of Mr. McCane's injuries—only that *he* did not sustain any injuries following his use of force. *See* Robin Decl., Exhibit N. This glaring omission was one reason why he was ultimately terminated from his position. *See* Robin Decl., Exhibit Y.

21.     Second, defendant Wilkowski submitted an Inmate Misbehavior Report, which DOCCS rejected as false and/or inaccurate in its notice of discipline for the same reasons DOCCS deemed Wilkowski's Use of Force Memorandum false and/or inaccurate. *See* Robin Decl., Exhibits N and Y. Further, according to the Notice of Discipline, defendant Wilkowski claimed on a Report of Strip Frisk on Admission to SHU, which he drafted, that the strip frisk had been completed following the use of force. Robin Decl., Exhibit Y. Defendant Wilkowski later testified that the strip frisk was incomplete. He stated, "I never did check his scrotum or penis and I never checked his anal cavity for drugs." Robin Decl., Exhibit E, at 57. Thus, defendant Wilkowski *knew* the strip frisk was incomplete when he and the other officers took Mr. McCane to his cell in the SHU, and despite this, he knowingly lied on his report. This false statement was yet another reason why he was ultimately terminated from his position. *See* Robin Decl., Exhibit Y.

22.     Third, according to his Notice of Discipline, defendant Wilkowski made false and/or inaccurate statements to OSI investigators. Specifically, he claimed that Mr. McCane was noncompliant regarding his order to hand him articles of clothing one at a time and that his use of force was justified because he reasonably believed that Mr. McCane formed fists and attempted to turn around to hit him with his left hand. *See* Robin Decl., Exhibit Y. Once

again, the video footage contradicts the claim that Mr. McCane posed a threat or intended to attack, and this Court should rely on the video footage—not on the self-serving testimony of the defendants. *See Scott v. Harris*, 550 U.S. at 380-81; *Plumhoff*, 572 U.S. at 775-76; *Zellner*, 494 F.3d at 371; *see generally* Robin Decl., Exhibit K.

> **ii.    Defendants Bunn and Masucci possessed a sufficiently culpable state of mind when they pulled Mr. McCane's legs causing him to fall on his face without proper justification and by using a disproportionate amount of force.**

23.    Defendants Bunn and Masucci's use of force was unnecessary, inappropriate, and disproportionate. First, defendant Wilkowski believed that defendant Masucci's use of a CERT technique, in which an officer pulls an inmate's legs out from under him to place him in a figure four leg lock, was unnecessary and excessive because Mr. McCane was pinned against the wall and was not resisting. Defendant Wilkowski testified that "[he saw] Inmate McCane's head bounce off the floor and that's where he sustained his injuries." Robin Decl., Exhibit E, at 50. Defendant Wilkowski contends that defendant Masucci's use of force caused Mr. McCane's injuries—that defendant Masucci's CERT technique caused Mr. McCane to fall flat on his face and cause the fractured eye socket and fractured teeth.[1] Defendant Wilkowski believed defendant Masucci's use of force, specifically when he pulled Mr. McCane's legs from underneath him, was inappropriate because "[w]e didn't need to take that inmate to the floor, we could have handcuffed him on the wall." Robin Decl., Exhibit E, at 52.

---

[1] However, the video footage clearly shows that defendant Wilkowski's use of force caused Mr. McCane's injuries, at least in part, because the paint on the concrete wall is visibly chipped immediately after defendant Wilkowski shoved him against the wall. In any event, the video evidence demonstrates that both defendants Wilkowski and Masucci contributed to Mr. McCane's injuries.

This is because defendant Wilkowski believed "with the two of us or even the three of us we could have just held him against the wall and handcuffed him." *Id.*

24.     Defendant Masucci retained an expert, John Rourke, to demonstrate that his use of the CERT technique was appropriate because Mr. McCane posed a threat to him and defendant Wilkowski. First, it is unrefuted that defendant Masucci could not see what caused defendant Wilkowski to use force against Mr. McCane. This is because defendant Masucci was *behind* defendant Wilkowski at the moment prior to the use of force. Mr. Rourke testified that "[Masucci] can only react [to] what Wilkowski is doing, and when he sees Wilkowski react, then he reacts." Robin Decl., Exhibit J, at 30. Defendant Masucci stated that his use of force was based on the belief that "Officer Wilkowski felt threatened." However, he could not explain why defendant Wilkowski would feel threatened. He explained that because he was behind defendant Wilkowski, he could not "see what was going on." Robin Decl., Exhibit J, at 21-22. In other words, he used the CERT technique despite having no basis to justify this use of force.

25.     Second, Mr. Rourke testified that the DOCCS Directive #4944, titled the "Use of Physical Force," is not guidance; rather, "it's the law. It's expected to be followed."[2] Robin Decl., Exhibit J, at 17. Notably, Mr. Rourke admitted to and agreed that the Directive requires that correctional officers use the least amount of force necessary to control a situation. Robin Decl., Exhibit J, at 11. He also agreed that handcuffing an inmate in this situation would be a "lesser use of force" compared to taking an inmate to the ground. Robin Decl., Exhibit J, at 22-23. Thus, it is clear that defendant Masucci violated DOCCS Directive #4944 prohibiting

---

[2] Plaintiff requests that this Court take judicial notice of DOCCS' Directive #4944, which requires that correctional officers use force only when it is necessary and that such force must be proportionate. This Directive is classified, non-discoverable, or otherwise privileged, and Plaintiff does not have a copy in his possession.

unreasonable force, a conclusion reached by the Office of Special Investigation, defendant

Masucci's arbitrator, and defendant Masucci's superintendent.

26.     Third, defendant Masucci's documentation of the events was found to be

misleading or false. Defendant Masucci's attempt to mislead and omit material information from

his Use of Force Memorandum, specifically the characterization of Mr. McCane as defiant and

uncooperative and the important omission regarding how much force he used against Mr.

McCane, demonstrates the plain lack of necessity on the part of defendant Masucci to employ a

CERT technique, which is reserved for cell extractions—not SHU admissions. Robin Decl.,

Exhibit M. As described in detail above, video footage capturing the events leading up to

defendants' use of force indicates that Mr. McCane was compliant, not defiant, throughout the

entire process. The fact that multiple colleagues, OSI investigators, and an arbitrator found

defendant Masucci's actions excessive and unnecessary supports a finding that defendant

Masucci acted with a sufficiently culpable state of mind in violating the Eighth Amendment.

27.     Defendant Bunn's involvement following defendant Wilkowski's use of

force constituted excessive force because he assisted defendant Masucci in employing the CERT

technique, bringing Mr. McCane to the ground unnecessarily. First, defendant Bunn's

involvement in the use of the CERT technique is undeniable, as demonstrated by the video

footage. *See* Robin Decl., Exhibit K, at 05:27. Second, defendant Bunn had observed the entirety

of the SHU admission search leading up to the use of force, and he observed Mr. McCane's

complete compliance with defendant Wilkowski's orders. *See* Robin Decl., Exhibit D, p. 38.

Therefore, having known that defendant Wilkowski slammed Mr. McCane into the wall

unnecessarily and with excessive force, defendant Bunn still took part in defendant Masucci's

subsequent use of excessive force, when he pulled out Mr. McCane's legs and caused him to fall

directly on his face. Defendant Bunn, along with defendants Wilkowski and Masucci, caused

extensive, lasting injuries to Mr. McCane; knew that any use of force was unwarranted given Mr.

McCane's complete compliance; knew that Mr. McCane did not pose a threat; and made no

efforts to temper the severity of a forceful response. For these reasons, defendants Wilkowski,

Bunn, and Masucci used excessive force against Mr. McCane in violation of his Eighth

Amendment right against cruel and unusual punishment.

## DEFENDANTS WILKOWSKI, BUNN, AND MASUCCI VIOLATED MR. MCCANE'S EIGHTH AMENDMENT RIGHT AGAINST EXCESSIVE FORCE WHEN THEY FAILED TO INTERVENE IN THEIR RESPECTIVE USES OF FORCE

28.    Defendants Wilkowski, Bunn, and Masucci were deliberately indifferent

to Mr. McCane's Eighth Amendment right against excessive force when they each failed to

intervene and prevent harm to Mr. McCane. It is well settled that a law enforcement officer has

an affirmative duty to intervene on behalf of an individual whose constitutional rights are being

violated in his presence by other officers. *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir.

2001) ("Failure to intercede results in [section] 1983 liability where an officer observes

excessive force being used or has reason to know that it will be.") (internal citations omitted). A

correctional officer who is present, though not participating, during an assault upon an inmate

may nonetheless bear responsibility for any resulting constitutional deprivation. *Anderson v.

Branen*, 14 F.3d 552, 557 (2d Cir. 1994). To demonstrate that a correctional officer failed to

intervene in violation of an inmate's Eighth Amendment right against excessive force, a plaintiff

must show that (1) the officer possessed actual knowledge of the use of excessive force by

another correctional officer; (2) the officer had a realistic opportunity to intervene and prevent

the harm from occurring; and (3) the officer nonetheless disregarded that risk by intentionally

refusing or failing to take reasonable measures to end the use of excessive force. *Curley*, 268 F.3d at 72.

**A.  Defendant Masucci had a duty to intervene against defendant Wilkowski's use of excessive force and disregarded that use of force by failing to take reasonable measures to end the use of excessive force.**

29.  Defendant Masucci should have intervened against defendant Wilkowski's use of excessive force, specifically when defendant Wilkowski slammed Mr. McCane's face into the wall of the SHU strip frisk room. Defendant Masucci possessed actual knowledge that defendant Wilkowski was using excessive force because defendant Wilkowski shoved and held Mr. McCane against the wall despite Mr. McCane's compliance. Defendant Masucci had a realistic opportunity to intervene because he was within arm's reach of defendant Wilkowski. Despite his proximity, defendant Masucci did nothing to end the use of excessive force. In fact, defendant Masucci's use of excessive force immediately following defendant Wilkowski's use of excessive force should be considered an intentional refusal "to take reasonable measures to end the use of excessive force." *See Curley*, 268 F.3d at 72. For these reasons, defendant Masucci acted in deliberate indifference to Mr. McCane's right against excessive force under the Eighth Amendment by not only failing to intervene but also by using excessive force himself.

**B.  Defendant Wilkowski had a duty to intervene against defendant Masucci's use of excessive force and disregarded that use of force by failing to take reasonable measures to end the use of excessive force.**

30.  Defendant Wilkowski should have intervened against defendant Masucci's use of excessive force; namely, when defendant Masucci employed a CERT technique by pulling out Mr. McCane's legs from underneath him, causing him to fall directly on his face. Defendant Wilkowski admitted that "[w]e didn't need to take that inmate to the floor, we could have

17

handcuffed him on the wall." Robin Decl., Exhibit E, at 52. Defendant Wilkowski even testified

that "we believe that [Masucci's] use of force was wrong" after having "talked to *everyone* in the

room about it." *Id.* at 74. Having known that bringing Mr. McCane to the ground would

constitute unnecessary and excessive force, defendant Wilkowski should have prevented

defendant Masucci from using the CERT technique. Defendant Wilkowski should have

communicated to defendants Masucci and Bunn that the proper course of action was to secure

Mr. McCane against the wall and handcuff him. Despite having this opportunity and knowledge,

defendant Wilkowski continued in his use of force and failed to take reasonable steps to prevent

and end defendant Masucci's use of force. For these reasons, defendant Wilkowski acted with

deliberate indifference to Mr. McCane's right against excessive force by failing to intervene.

### C.       Defendant Bunn had a duty to intervene against defendant Masucci's use of excessive force and disregarded that use of force by failing to take reasonable measures to end the use of excessive force.

31.     Defendant Bunn should have intervened against defendant Masucci's use

of excessive force. Defendant Bunn was the SHU shuttle operator and was tasked with capturing

the SHU admission process on video. Once he placed the camcorder on the tripod, he remained

in the SHU strip frisk room to observe the search and frisk of Mr. McCane. Defendant Bunn

possessed actual knowledge of the use of excessive force because he observed the entire

admissions process leading up to the use of excessive force, knowing that Mr. McCane was fully

compliant throughout the process. Thus, when defendant Masucci pulled Mr. McCane's legs

from underneath him despite Mr. McCane's complete compliance, defendant Bunn knew

defendant Masucci was using excessive force. Defendant Wilkowski even testified that

defendant Bunn agreed that defendant Masucci's use of force was "wrong." *See* Robin Decl.,

Exhibit E, at 74. Further, it is clear based on the video footage, *see* Robin Decl., Exhibit K, at

05:24-05:27, that defendant Bunn was very close in proximity to defendants Wilkowski and Masucci. Defendant Bunn had an obvious opportunity to intervene and prevent further injury to Mr. McCane. Instead, defendant Bunn failed to stop defendant Masucci from using force that "everybody that was in that room" agreed was unnecessary and excessive. *See* Robin Decl., Exhibit E, at 74. For these reasons, defendant Bunn acted in deliberate indifference to Mr. McCane's right against excessive force by failing to intervene against the actions of defendant Masucci.

## **CONCLUSION**

32.    In sum, defendants Wilkowski and Masucci violated Mr. McCane's Eighth Amendment right against the use of excessive force because they possessed a sufficiently culpable state of mind when they slammed him against the wall and pulled his legs out causing him to fall on his face. The injuries Mr. McCane sustained were sufficiently serious; the defendants made no effort to temper the severity of the response; there was no need to use force; the force used by defendants was egregiously disproportionate to what the situation required; Mr. McCane was never a threat to any of the officers during this strip search, as demonstrated by his complete compliance seen in the video footage; and both the OSI and the arbitration found that defendants here used excessive force.

33.    For the foregoing reasons, this Court should grant Plaintiff's motion for summary judgment against defendants Wilkowski, Bunn, and Masucci in its entirety for violating Mr. McCane's Eighth Amendment right against excessive force, and an order should issue a finding that defendants Wilkowski, Bunn, and Masucci are liable under 42 U.S.C. § 1983 for using excessive force in violation of the Eighth Amendment. Mr. McCane respectfully requests the award of any such other and further relief as the Court deems just and proper.

Dated: April 18, 2023
New York, New York

Caitlin Robin, Esq.
CAITLIN ROBIN & ASSOCIATES, PLLC
*Attorneys for Plaintiff, David McCane*
30 Broad Street, Suite 702
New York, New York 10004
(646) 524-6026
caitlin@robinandassociates.com