# Exhibit B

STATE OF NEW YORK
PUBLIC EMPLOYMENT RELATIONS BOARD

In the Matter of the Arbitration Between
STATE OF NEW YORK
DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
(Gowanda Correctional Facility)

OPINION
and
AWARD

- and -

NEW YORK STATE CORRECTIONAL OFFICERS AND
POLICE BENEVOLENT ASSOCIATION, INC.
(Grievant: Correction Officer Constantino Masucci)

PERB Case No. D2017-0186

BEFORE:   Arbitrator Timothy S. Taylor, Esq.

Appearances:
     New York State Department of Corrections and Community Supervision
     By: David J. Gallagher, Human Resources Specialist 3/Bureau of Labor Relations
        Susan Ward, Human Resources Specialist 3

     New York State Correctional Officers and Police Benevolent Association, Inc.
     By: The Law Offices of W. James Schwan
        W. James Schwan, Esq.
        Peter Schwan, Esq.

The Arbitrator was appointed in accordance with the procedures of the New York State

Public Employment Relations Board to hear and render a binding determination in the above

entitled arbitration between the State of New York Department of Corrections and Community

Supervision ("State" or "DOCCS") and the New York State Correctional Officers and Police

Benevolent Association, Inc. ("NYSCOPBA" or "Union") regarding Correction Officer

Constantino Masucci ("Grievant").  Under Article 8 of the 2009-2016 Collective Bargaining

CONFIDENTIAL

1

MASUCCI000039

Agreement between the State and NYSCOPBA ("the Agreement" or "CBA;" J. 2[1]), Grievant was placed on administrative leave with pay on January 19, 2018, and suspended from duty without pay on February 6, 2018. The State issued Grievant a Notice of Discipline ("NOD") on February 6, 2018. The NOD seeks the Grievant's dismissal from State service and loss of any accrued annual leave. On February 8, 2018, Grievant filed a disciplinary grievance. The grievance was moved to arbitration under the CBA.

Hearings were held in Buffalo, New York on November 1, 7, and 8, 2018. The parties had a full and fair opportunity to present testimony; submit documentary evidence; call and cross-examine witnesses, and provide arguments to support their respective positions. The parties' closing briefs were received on January 11, 2019, as of that date the record was closed.

## DISCIPLINARY CHARGES

The NOD [2] filed by the State against the Grievant in pertinent part states:

Pursuant to Article 8, Security Services Unit Agreement between the State of New York and NYSCOPBA, you are hereby informed that we shall implement the following penalty:

### DISMISSAL FROM SERVICE
### AND LOSS OF ANY ACCRUED ANNUAL LEAVE

The reason for this discipline is your misconduct based upon the following:

The reason for this discipline is your misconduct based upon the following:

1. On January 13, 2018, at approximately 7:00 p.m., while on duty at Gowanda Correctional Facility in the Special Housing Unit, you used excessive physical force. Your actions violated Sections 2.2, 2.23, 7.9, and 9.2 (a, b, e) of the DOCCS Employees' Manual, as well as DOCCS Directive #4944 *"Use of Physical Force"*, Section III, A,B, and E. Specifically, in concert with Correction Officers Wilkowski

---

[1] The exhibits are referenced as J. ___ for Joint, S. ___ for State, and U. ___ for Union. The transcript is referenced as T. ___

[2] At the arbitration hearing the State corrected the contents of Charges 1 and 2 of the N.O.D. to two (2) broken teeth.

CONFIDENTIAL

2

MASUCCI000040

and Bunn, you were present and used excessive physical force upon inmate McCane, 14B0419, resulting in inmate McCane sustaining injuries including, but not limited to, four (4) broken teeth and fracture of his left eye socket.

2. On January 13, 2018, at approximately 7:00 p.m., while on duty at Gowanda Correctional Facility, you submitted a false and/or misleading report. Your actions violated Sections 2.2, 4.16, 7.9 and 9.4 of the DOCCS Employees' Manual, as well as DOCCS Directive #4944 *Use of Physical Force,* "Section IV(A). Specifically, you were present and used and/or witnessed unnecessary and/or excessive physical force used upon inmate McCane, 14B0419 in the Special Housing Unit Frisk Room, resulting in inmate McCane sustaining injuries including, but not limited to, four (4) broken teeth and fracture of his left eye socket. You submitted a Use of Force Memorandum in which you failed to accurately report the reason for the use of physical force and/or the amount of force that was used.

3. On January 13, 2018, prior to the end of your tour of duty at Gowanda Correctional Facility, you attested to the veracity of a false and/or inaccurate written report. Your actions violated Sections 2.2 and 4.16 of the DOCCS Employees' Manual. Specifically, you co-signed an Inmate Misbehavior Report (Form 2171A) in which was stated, in words of substance, that inmate McCane, 14B0419 was uncooperative in failing to follow several direct orders, and when told to turn and face the wall he unlocked his hands, making fists, and tried to turn around.

4. On January 23, 2018, during the course of a formal interrogation by Investigators of the Office of Special Investigations, you made false and/or inaccurate statements which were entered into official records, and/or failed to disclose pertinent facts. Your actions violated Sections 2.2 and 4.16 of the D.O.C.C.S. Employees' Manual. Specifically, you provided false and/or inaccurate information as noted below:

A. You stated, in words or substance, inmate McCane 14B0419 was defiant from the time you opened the door, did not step into the SHU when directed, and continued to look around after ordered to face the wall.

B. You stated, in words or substance, that numerous orders were given to inmate McCane 14B0419 to keep his hands locked behind his back during the strip frisk.

C. You stated, in words or substance, that inmate McCane 14B0419 was ordered several times to sit in the BOSS chair.

D. You stated, in words or substance, that to the best of your knowledge the strip frisk of inmate McCane 14B0419 was completed.

3

CONFIDENTIAL                    MASUCCI000041

# RELEVANT CONTRACT LANGUAGE

Article 8 of the Collective Bargaining Agreement between the parties in pertinent part states:

### Bill of Rights

In all disciplinary hearing proceedings under Article 8, the burden of proof shall rest with the Employer.

## ARTICLE 8
## Discipline

8.1    Exclusive Procedure

Discipline shall be imposed upon employees otherwise subject to the provisions of Sections 75 and 76 of the Civil Service Law only pursuant to this Article, and the procedures and remedies herein provided shall apply in lieu of the procedures and remedies prescribed by such sections of the Civil Service Law which shall not apply to employees.

8.2    Disciplinary Procedure

(a)    Discipline shall be imposed only for just cause. Where the appointing authority or his designee seeks the imposition of a loss of leave credits or other privilege, written reprimand, fine, suspension without pay, reduction in grade, or dismissal from service, notice of such discipline shall be made in writing and served, in person, by courier, or by registered or certified mail upon the employee. The conduct for which discipline is being imposed and the penalty proposed shall be specified in the notice. The notice served on the employee shall contain a detailed description of the alleged acts and conduct including a reference to dates, times and places and if the Employer claims that the employee has been charged with a crime for the alleged acts, the notice of discipline must identify the specific section of the Penal Law or other statute which the employer claims the employee has been charged with violating, if known by the Employer. The employee shall be provided with two copies of the notice which shall include the statement, "You are provided two copies in order that one may be given to your representative. Your Union representative is NYSCOPBA."

(h) Disciplinary arbitrators shall confine themselves to determinations of guilt or innocence and the appropriateness of the proposed penalties, taking into account mitigating and extenuating circumstances. Disciplinary arbitrators shall neither add to, subtract from nor modify the provisions of this Agreement. The disciplinary arbitrator's decision with respect to guilt or innocence, penalty or probable cause for suspension pursuant to Section 8.4 of this Article, shall be final and binding upon the parties, and the disciplinary arbitrator may approve, disapprove or take other appropriate action warranted under the circumstances, including, but not limited to, ordering reinstatement for all or

CONFIDENTIAL

MASUCCI000042

part of the period of suspension. If the disciplinary arbitrator, upon review, finds probable cause for the suspension, he may consider such suspension in determining the penalty to be imposed.

8.4   <u>Suspension Before Notice of Discipline</u>

(a)   Prior to issuing a notice of discipline or the exhaustion of the disciplinary grievance procedure provided for in this Article, an employee may be suspended without pay by his appointing authority only pursuant to paragraphs (1) and (2) below.

(1)   The appointing authority or his designee may suspend without pay an employee who the appointing authority or his designee determines that there is probable cause that such employee's continued presence on the job represents a potential danger to persons or property or would severely interfere with its operations. Such determination shall be reviewed by a disciplinary arbitrator. A notice of discipline shall be served no later than seven days following such suspension. At the time of suspension, the appointing authority or his designee shall set forth in writing to the employee the specific reasons for the suspension.

(2)   The appointing authority or his designee may with agency approval suspend without pay an employee charged with the commission of a crime. Such employee shall notify his appointing authority in writing of the disposition of any criminal charge including a certified copy of such disposition within seven days thereof. Within 30 days following such suspension under this provision, or within seven days before receipt by the appointing authority of notice of disposition of the charge from the employee, whichever occurs first, a notice of discipline shall be served on such employee or the employee shall be reinstated with back pay. Nothing in this paragraph shall limit the right of the appointing authority or his designee to take disciplinary action during the pendency of criminal proceedings.

(c) Back Pay Award
Where an employee is awarded back pay, the amount to be reimbursed will be offset by unemployment insurance collected by the employee during the period that the back pay award covers. An award of back pay shall be deemed to include reimbursement of all other benefits including the accrual of leave credits and...

8.6   <u>Limitation</u>
An employee shall not be disciplined for acts, except those which would constitute a crime, which occurred more than nine months prior to the service of the notice of discipline. The employee's whole record of employment, however, may be considered with respect to the appropriateness of the penalty to be imposed, if any.

CONFIDENTIAL

5

MASUCCI000043

## RELEVANT DOCCS EMPLOYEES' MANUAL RULES

**2.2** Lawful Comportment: An employee shall not knowingly or willingly violate any law or ordinance of the United States or the State of New York or any rule, regulation, or directive of the Department. Any conduct, whether occurring on or off-duty, which constitutes an "offense" as defined in the penal law, or any conduct which alleges the possession and/or use of a controlled substance or marijuana, may be the basis for disciplinary action, regardless of whether an arrest, prosecution, or conviction occurred.

**2.23** Employees shall recognize that the Department protects society, not only by maintaining inmates in secure custody or under community supervision, but also by preparing as many inmates as possible for law abiding living when released. Every employee shall discharge his or her duties and comport himself or herself so as to carry out the programs and policies of the Department.

**4.16** Falsification of records: No employee shall knowingly make a false or inaccurate official report or statement, orally or in writing, or make, maintain, cause, or permit to be made a false or inaccurate record or false or inaccurate entry in official records or omit or fail to disclose pertinent facts.

**7.9** Employees shall cooperate in maintaining the security and good order of the facility and shall aid in the rehabilitation of inmates. Each employee shall be responsible for the efficient performance of duties assigned, including the proper custody, supervision, and welfare of all inmates under his or her direction. All employees are responsible for adjustment evaluation reports or reports of incidents occurring during their tours of duty that indicate above average interest and application and/or those which demonstrate disruptive, bizarre, unusual, or inappropriate behavior.

**9.2** Use of physical force:
a. The greatest caution and conservative judgment shall be applied in determining:
1) Whether physical force is necessary; and
2) The degree of such force that is necessary.
Each employee is personally charged under law and the policies of the Department with responsibility for acting in good faith, with reasonable care, and upon probable cause.
b. Where it is necessary to use physical force, only such degree of force as is reasonably required shall be used.
c. An employee shall not lay hands on or strike an inmate, unless the employee reasonably believes that the physical force to be used is necessary for self-defense, to prevent injury to a person or to property, to enforce compliance with a lawful direction, to quell a disturbance, or to prevent an escape.

**9.4** Reports of Use of Physical Force: In all instances where physical force is used on an inmate, a "Use of Force Report" will be submitted by the individual using such force to the Superintendent prior to the completion of the individual's tour of duty. The report will be completed as outlined in Directive #4944, "Use of Physical Force."

CONFIDENTIAL

MASUCCI000044

Directive #4944, "Use of Physical Force."

I. **DESCRIPTION:** This directive sets forth the rules and policies regarding the use of physical force by staff assigned to a correctional facility and the recording of all such incidents.

II. **DEFINITION:** For purposes of this directive, "Use of Force" is defined as an instance in which physical action is taken to resolve an incident. Such action is not limited to body holds, but includes all instances where a baton, shield, chemical agents, mechanical restraints (where an inmate is forcefully subdued or restrained and mechanical restraints are applied), or firearms are used.

III. **USE OF PHYSICAL FORCE - POLICY**
A. The greatest caution and conservative judgment shall be applied in determining:
1. Whether physical force is necessary; and
2. The degree of such force that is necessary.
Each employee is personally charged under law and the policies of the Department with responsibility for acting in good faith, with reasonable care, and upon probable cause.
B. Where it is necessary to use physical force, only such degree of force as is reasonably required shall be used.
NOTE: Unless in situations as described below, Department policy prohibits the use of high impact force which includes:

- Strikes, kicks, or blows to the head, face, groin, kidneys, and spinal column
- Choke holds, carotid restraint holds, and other neck restraints

E. An employee shall not lay hands on or strike an inmate unless the employee reasonably believes that the physical force to be used is reasonably necessary: for self-defense; to prevent injury to person or property; to enforce compliance with a lawful direction; to quell a disturbance; or to prevent an escape.

IV. **REPORTS OF USE OF PHYSICAL FORCE:** All instances where physical force is used will be recorded in the facility Use of Force Log and will be reported on the "Use of Force Report," Form #2104 to the Superintendent, as well as recorded on the Electronic (computerized) Use of Force Reporting system.

Note: In all instances staff will immediately report physical force used to their immediate area security supervisor.

A. "Use of Force Report" - Part I - "Report of Incident:" In ALL instances where an employee uses physical force, specific details regarding the incident must be reported, in writing, to the Superintendent prior to completion of the individual's tour of duty. In incidents where one employee uses physical force, that employee will accurately

CONFIDENTIAL

7

complete all fields contained within the "Use of Force Report," Form #2104, Part I - "Report of Incident," and submit it to his or her supervisor. When an incident occurs where force is used by more than one employee, each employee will independently and accurately complete all fields contained within Part I of Form #2104A, "Use of Force - Staff Memorandum," and submit it to the Superintendent. A Supervisor (Sergeant or above) will be assigned to ensure all "Use of Force - Staff Memorandum" forms are drafted independently and without collaboration. Any employee identified by the supervisor as having information related to the incident shall fill out Form #2104A.

<u>ISSUES</u>

The parties stipulated to:

1) Is the Grievant guilty of the charges as stated in the February 6, 2018, Notice of Discipline?

2) If guilty, is the proposed penalty of dismissal from State service and loss of any accrued annual leave an appropriate penalty?

3) If not, what is the appropriate penalty?

4) Was the suspension of Grievant in accord with Article 8.4 (a)(1) of the Collective Bargaining Agreement?

The parties have also stipulated that:

Grievant's Annual Employee Evaluations were "Excellent" except for one (1) "Good" rating.

DSS Bunn would expect an employee who has received an Employees' Manual to follow the rules;

DSS Bunn would expect an employee who has received training in the use of force to follow those rules; and

Inmate McCane has no misbehavior reports for assault on staff or fighting with other inmates.

<u>FACTUAL BACKGROUND</u>

The New York State Department of Corrections and Community Supervision employs Grievant as a correction officer. He is assigned to the Gowanda Correctional Facility, in Gowanda, NY. Grievant has been employed with DOCCS for approximately

CONFIDENTIAL

twelve (12) years. He has no prior discipline. His bid position is Special Housing Unit ("SHU") Relief Officer. His performance evaluations have been excellent. Grievant is a member of the Corrections Emergency Response Team ("CERT").

On January 13, 2018, Grievant worked the 3:00 p.m. to 11:00 p.m. shift. Grievant was on duty in the SHU as the SHU #2 Officer. Grievant was not responsible for the admissions procedure or the strip frisk process. Grievant was on duty when Inmate David McCane ("Inmate McCane" or "inmate") was transported to the SHU for admission.

At approximately 7:00 p.m., Inmate McCane arrived at the SHU for admissions. Grievant testified he had no prior relationship with Inmate McCane and did not know him before January 13, 2018. Grievant escorted Inmate McCane into the strip frisk room. The strip frisk room is approximately 15 feet by 15 feet. Within the strip frisk room is an area where the actual strip frisk occurs. This area is enclosed by a privacy wall four and a half (4 ½) feet wide and four feet (4) in height and stands between the camera operator and the strip frisk area. The privacy wall is there to block the view of the inmate's genitals and lower body during a strip search.

CO Timothy Bunn video recorded Inmate McCane's SHU reception process. The procedure for operating the video camera is for the camera operator to place the video camera on a tripod pointed toward the inmate. The operator stands away from the tripod with the camera. He is to leave the area before the strip frisk begins.

Inmate McCane wore a green jacket. CO Wilkowski performed a Body Orifice Scanning System ("B.O.S.S") chair examination, pat frisk and strip frisk upon Inmate McCane in the SHU strip search area.

The video records CO Wilkowski performed a B.O.S.S. chair examination. During the B.O.S.S. chair examination, the inmate is handcuffed and wearing the green jacket. CO Wilkowski orders the inmate to sit down on the B.O.S.S. chair. Wilkowski says, "sit down kid; it's not hard." The inmate complies with the order. The inmate is ordered to lift his handcuffed hands while sitting on the B.O.S.S. chair. The inmate is ordered to slide back in the chair. This command is repeated. Once the B.O.S.S. chair inspection is complete, the inmate is escorted to the strip frisk area. Present in the strip frisk room was Grievant, SHU Officer #1 CO Wilkowski, camera operator CO Bunn and Correction Sergeant Daniel Dennis.

The strip frisk begins with CO Wilkowski telling the inmate to obey all orders and not to turn around unless ordered. CO Wilkowski asks the inmate if he understands the commands. The inmate answers "yes." The inmate is informed of the position of non-aggression, which is to keep his left hand grasping his right wrist behind his back. If he fails to maintain this position, he will be dealt with accordingly.

The inmate is ordered to face the wall. He is uncuffed. He is ordered to place his left hand on the wall. The inmate places his left hand on the wall. CO Wilkowski orders him to place it high up, locking out his arms. In doing so, CO Wilkowski forcefully grabs the inmate's hand and places it higher on the wall. The inmate is ordered to place his right hand on the wall, which he does.

CO Wilkowski then orders the inmate to move to his feet away from the wall. He pats frisks the inmate. The inmate is given the general order to remove clothing items and hand them to CO Wilkowski while facing the wall. The inmate hands several items, one at a time, to CO Wilkowski. After removing each item of clothing, Inmate McCane always returns to the position of non-aggression. The inmate is ordered to remove his pants and long johns. The inmate

CONFIDENTIAL

MASUCCI000048

complies. The inmate asks for permission to ask a question. CO Wilkowski tells the inmate not now. The inmate is directed to turn around and face CO Wilkowski. The inmate complies with the order. The inmate is directed to open his mouth and swipe his gums. Wilkowski directs the inmate to repeat the procedure. The inmate is ordered to open his mouth and lift his tongue.

Wilkowski ordered the inmate to lift his arms...higher...show his palms. The inmate is ordered to show the area behind his ears. Wilkowski orders the inmate to turn around and put his hands behind his back. The inmate is ordered to remove his socks. He is then directed to place his hands behind his back and grab his wrist. Then he is ordered to turn around and face CO Wilkowski. The inmate is compliant.

There is a verbal exchange. Inmate McCane says, "don't talk to me like I'm a little kid. I'm not a little kid." CO Wilkowski replies, "then answer me like a man." The inmate is ordered to unclasp his hands and lift his penis. He is ordered to separate his genitals. The inmate complies. While facing CO Wilkowski, the inmate looks to the side and says, "Masucci." CO Wilkowski twice orders him to turn around. As the inmate begins to turn around and face the wall, he makes a flat tire sound.

The video records Inmate McCane turning to face the wall. With his hands unclasped, the inmate's elbows are moving back in a motion to grab his right wrist with his left hand. CO Wilkowski again orders him to turn around and to place his hands behind his ......at this moment; CO Wilkowski drives the inmate into the wall by using his right forearm to deliver force to the center of the inmate's back, while completing the command "back." The force causes the inmate's face to strike the outside wall. Inmate McCane's teeth chip the paint on a spot on the outside wall. Simultaneously, CO Wilkowski uses a half-nelson hold to secure the

inmate's left arm pinning him against the wall. The inmate turns his face away from the wall. CO Wilkowski with his right forearm holds Inmate McCane against the wall.

CO Bunn comes into view. Seconds later  Grievant arrives and disappears below the privacy wall. Grievant testified he grabbed and pulled the inmate's legs out from underneath him. The inmate is taken to the floor. Sergeant Dennis enters the frisk area. He comes into view and stands above the officers and inmate. Grievant and CO Bunn assist the inmate to his feet. CO Wilkowski said, " this is not a game." The inmate spits out blood. Wilkowski asks Sergeant Dennis, "Bring him back?" To which Sgt. Dennis replies, "Yup." CO Bunn was injured during the incident. He suffered an injury to his right hand. CO Bunn reported his injury in his Use of Force Staff Memorandum.

Because of the use of force, Inmate McCane sustained injuries including a fracture of his left eye socket and two broken teeth. Photographs of his mouth taken immediately before the use of force incident show his undamaged front teeth. Photographs were taken after the use of force incident. They document damage to the front teeth. The video shows chipped paint on the wall where the inmate's mouth struck.

In the SHU logbook, staff records Inmate McCane's claim that staff inserted an object into his rectum during the use of force incident. The inmate further claims he blacked out during the strip frisk. In Inmate McCane's report of interview taken by Office of Special Investigations ("OSI") Senior Investigator John Ginnitti, he states that when he was driven into the wall, he felt his teeth break. In his report of interview, the inmate claims that his head was stomped on and he was kicked in the eye.

A CT scan revealed that the fracture of Inmate McCane's left eye socket took place during the use of force. Dr. Paula Bozer, a physician, who works for DOCCS,  testified that

such fractures were called "blow out" fractures and are usually caused by a blunt injury to the orbital. Dr. Bozer testified that a punch or kick would be considered blunt force and that the inmate's injuries were not minor.

Following the incident, Sgt. Dennis prepared a Use of Force Report setting forth his actions during the incident, staff present during the incident, and a detailed description of the event. The Use of Force Report identified CO Wilkowski and Grievant as staff involved in the use of force. It identifies Officer Bunn as being present during the use of force. In preparing his Use of Force Memorandum, the Grievant was not permitted to view the video of the incident.

Sergeant Dennis's Use of Force Report contained these entries:

During a SHU admission strip frisk inmate McCane, D 14b0419 continued to be uncooperative and Argumentative. At the end of the frisk, CO Wilkowski observed inmate McCane clench his fists and began to turn to the right.

CO Wilkowski used force by using his left arm and body to push McCane to the wall. With his right hand, he grabbed McCane's right wrist and forced him to the floor. McCane continued to resist until officer Wilkowski applied mechanical restraints.

CO Masucci responded and used force by utilizing a figure four leg lock to McCane. He did this by using his left hand to grab McCane's left ankle and placing it behind McCane's right knee and with his right hand grabbed McCane's right ankle and pushed it upward to his buttocks.

RN Palmer responded to SHU to evaluate inmate McCane. McCane was uncooperative with the RN during his medical assessment; not allowing her to examine him, but complained of pain in his jaw. Inmate McCane was then escorted via camera to the infirmary for tel-med and further evaluation. RN Palmer observed a laceration on his tongue with trace amounts of blood. Palmer also observed a½" abrasion on his forehead, redness to his left eye and upper and lower broken teeth, but did not observe any deformity, dislocation or swelling. Tel-med assessment determined McCane should be transported to Erie County Medical Center for further evaluation.

CONFIDENTIAL

MASUCCI000051

On January 13, 2018, Grievant wrote a Use of Force Staff Memorandum which states:

> On the above date and approximate time. During a S.H.U. admission on Inmate McCane, David, 14 BO419, I CO Masucci #2 SHU officer, was standing by the door in the SHU frisk room when I observed CO Wilkowski force the inmate to the wall and down to the floor. During the admission Inmate McCain (sic), was being very defiant towards staff.
>
> I then responded to assist CO Wilkowski and applied a figure four leg lock on the inmate. By taking the inmates left ankle w/my left hand and placing his left ankle behind his right knee and w/ my right hand I grabbed his right ankle pushing it up toward his buttocas (sic) locking his left ankle behind his right knee with downward pressure, until mechanical restraints were applied.
>
> Following the use of force, I assisted Inmate McCane to is feet and escorted him to his cell, B-17, in the SHU with CO Wilkowski without incident. I no time did I sustaine (sic) any injuries and was seen by medical staff at the facility.

On January 13, 2018, Grievant endorsed an Inmate Misbehavior Report which states:

> On the above date and approx time I officer Wilkowski was conducting a strip frisk on Inmate McCane, D. 14B0419. During the entire procedure said inmate was given several direct orders which he was very uncooperative and did not follow. During the admission said inmate was told to turn and face the wall. At this time he unlocked his hands making fists and tried to turn around. Force was used. Inmate had mechanical restraints applied was stood up and escorted to his cell. End report.

On January 23, 2018, Grievant stated to OSI investigators: Q. And the same with the boss chair, he had to do the boss chair twice? (J.24 p. 15). A. Yes. Q. Is that correct ? A. Yes. Q. Or was it more than twice? A. I only recall twice.

The transcript (J.24 at page 23 line 18) records that Grievant stated that CO Wilkowski gave the inmate a compound order which included an order to "look straight ahead, follow my commands, and after you take off an article of clothing place your hands behind your back." OSI investigators then asked the Grievant "How many times did Officer Wilkowski have to restate those directions?" Grievant's answer was "numerous."

CONFIDENTIAL

14

The Grievant stated during the interrogation Q. Okay. Was the strip frisk ever completed? A. Yes. Q. It was? A. To my knowledge. Q. Did the inmate show the bottoms of his feet A. Yes. (J.24 p.32-33).

Senior Investigator Ginnitti testified, that based on his experience as both an investigator and as a DOCCS certified trainer in use of force, the actions of Grievant, Wilkowski and Bunn were unnecessary and excessive. In his opinion, Inmate McCane was obeying an order when Wilkowski first used force. The force he used was unnecessary and excessive. While the inmate was securely held against the wall and was under control, the inmate should have been handcuffed. The actions of Grievant and CO Bunn in bringing the inmate to the floor were unnecessary and excessive.

Gowanda C.F. Deputy Superintendent of Security ("DSS") Sanford Bunn testified that in his opinion based on a review of the video, Grievant's use of force was excessive and unwarranted. DSS Bunn testified that he needs to trust his staff to carry out their duties professionally and that the inmate population needs to know that staff will act within the scope of their duties.

Grievant testified in his defense. Grievant testified that he is a member of the Corrections Emergency Response Team ("CERT"). His CERT training involves instruction to get the inmate to the ground quickly. Grievant testified that he grabbed just above the inmate's ankles with his right hand, his right ankle, left hand, his left ankle. "I pulled him away from the wall so I could put him in a figure four leg lock." (T. 223-224).

CONFIDENTIAL   MASUCCI000053

## POSITIONS OF THE PARTIES

## THE STATE'S POSITION

The State argues that it has proven the charges by a fair preponderance of the credible evidence. The State believes that the facts are undisputed and are supported by video evidence. The State argues that the force Grievant used on Inmate McCane was unjustified and excessive. The State insists that it is more likely than not that Grievant used unnecessary and excessive force on Inmate McCane. The Inmate would not have been on the floor if not for Grievant's actions.

The State asserts that the Grievant is guilty of charge 1. The State contends that the video evidence and testimony is proof of Grievant's guilt. In the video, Grievant entered the camera's view of the strip frisk area. The Grievant testified that he reached down and pulled the inmate's legs out from under him effectively dropping him face first to the floor with CO Wilkowski on top of him. OSI Investigator Ginnitti and DSS Bunn testified that Grievant's actions were unnecessary and excessive. When Grievant pulled the inmate to the ground, the inmate was already under control. CO Wilkowski held him against the wall. The State observes that the inmate should have been handcuffed. The inmate was not a threat to fellow officers or the facility. By pulling the inmate's legs, Grievant created a risk to injury to CO Bunn and CO Wilkowski. The Grievant's special training in CERT did not apply to the situation involving Inmate McCane. Grievant's training was in the use of force for a riot or cell extraction, and neither circumstance was present on January 13, 2018.

The State insists that Grievant is guilty of charge 2. The State maintains that Grievant violated Directive # 4944 IV. A and Employees' Manual 9.4 by submitting a false and/or inaccurate use of force memorandum. Grievant's Use of Force Memorandum failed to document

the involvement of CO Bunn in the section headed "Identify all staff involved in the use of force." The video shows CO Bunn assisting in bringing the inmate to the floor. In the section entitled "Describe, in detail, the actual force used " Grievant's Use of Force Memorandum also omits that Grievant pulled Inmate McCane's legs out from under him. The Use of Force Memorandum was false and inaccurate. The Use of Force Memorandum also stated that Grievant stood by the door. He was actually in the strip frisk area.

The memorandum describes the inmate as being defiant. However, the video depicts a compliant inmate. In the section requiring the Grievant to describe the events leading to the use of force, Grievant omits that he used force to bring the inmate to the floor. He also omits the force CO Bunn, and CO Wilkowski used. The State contends that the Grievant omitted the required information intending to minimize his unnecessary and excessive use of force.

The State contends that Grievant is guilty of charge 3. Grievant co-signed the Inmate Misbehavior Report which states that the inmate unlocked his hands making fists and that the inmate failed to follow several direct orders. The video evidence contradicts the statements in the Inmate Misbehavior Report. The State argues that as a co-signer, Grievant attested to the veracity of the Inmate Misbehavior Report, which was false and inaccurate.

The State asserts that the Grievant is guilty of charge 4, which alleges that Grievant made four false and misleading statements to OSI investigators. The State argues that Grievant made the false and or inaccurate statements to support the misconduct of his fellow staff during the in-concert act and to deflect Grievant's culpability specifically. The video evidence contradicts Grievant's statements to OSI. The video shows that the inmate was not defiant. The inmate was not told numerous times to place his hand behind his back. The inmate was not directed several

CONFIDENTIAL

MASUCCI000055

times to sit properly on the BOSS chair. The strip frisk search had not been completed. Grievant's statements to the contrary violate DOCCS Employees' Manual 4.16.

The State maintains that Grievant's suspension was appropriate under Article 8.4 (a)(1) of the CBA. The video and Inmate McCane's report of interview establish probable cause. If true, Grievant's continued presence would have created a substantial risk to both persons and property at the facility.

The Department cannot tolerate employees who engage in behaviors which, in a correctional facility, would compromise the safety and security of both staff and inmates. No mitigating circumstances would serve as a reason to alter the proposed penalty. The circumstances surrounding the actions of Grievant mandate his dismissal from service. The State cites several cases to support termination. The State stresses that it has met the burden of proof. The requested penalty of termination is neither arbitrary nor capricious and is appropriate due to the severity and gravity of Grievant's misconduct.

## THE UNION'S POSITION

The Union insists that the State has failed to prove the charges by a preponderance of the credible evidence. Therefore the disciplinary charges must be dismissed. The Union argues that the State attempts to hold Grievant to exact standards of conduct yet holds itself to no standard. Grievant has no prior discipline and a twelve-year unblemished record with DOCCS.

The Union maintains that the video evidence does not depict the entire incident. The video only records what is viewable from the camera angle. The State draws conclusions from this recording. The video does not record what was happening below the half wall.

The Union asserts that the Grievant should have been allowed to view the video of the incident before completing his Use of Force Memorandum or attending the OSI interrogation.

CONFIDENTIAL

18

MASUCCI000056

The Union contends that any error in report writing could have been corrected if the State allowed Grievant to view the video. The Union argues that the State's reliance on the video contradicts its position that what cannot be seen may be inferred. The Union maintains that the OSI investigation was flawed. OSI reached its conclusions without reviewing the video with Grievant, CO Wilkowski, and CO Bunn.

The Union contends that the State's Form #2104 A part 1 uses the permissive term "should include." If the State wanted to convey a mandatory require it should have used the phrase "must include." The Union categorizes the lack of clear language as ambiguous. Because of the ambiguity, Grievant should have been given the opportunity to clarify his Use of Force Memorandum. The Union argues that the term "knowingly or willingly" in the Employees Manual has meaning as does the term "the employee reasonably believes." These terms must be applied to the charges.

The Union argues that Inmate McCane is not credible. Inmate McCane lied about what occurred during the strip search. The OSI Report of Interview states that the inmate claimed that he was kicked in the eye and had his head stomped on after being taken to the floor. No evidence supports the inmate's claim. The inmate lied when he stated staff inserted an object into his rectum during the use of force incident. There was no evidence of an investigation into this allegation. The video does not support this allegation. Inmate McCane also lied when he claimed that he blacked out during the strip frisk. The video evidence and the testimony established that he did not blackout. The inmate is also not credible because of his extensive disciplinary history. This history includes seventeen misbehavior reports and nine SHU admissions. The Inmate also has a history of disobeying direct orders. He has also been found with synthetic drugs. The inmate fully knew the SHU strip frisk process and knew what to expect.

CONFIDENTIAL

19

MASUCCI000057

The Union asserts that Grievant is not guilty of charge 1. There is no proof he caused any injuries to Inmate McCane. The OSI investigator admitted there was no proof that Grievant caused the inmate's injury. The Union argues that because no injuries were attributed to Grievant's use of force, the use of force could not have been excessive.

The Union maintains that Grievant is not guilty of charge 2. The incident was videoed. Any argument that it was important for Grievant's Use of Force Memorandum to be accurate so an accurate account could be memorialized, is defeated because the video would give the State all the needed information. Also, if the State wanted the use of force memorandum to be accurate, the Grievant should have been given the opportunity to review the video either before or after he submitted his Use of Force Memorandum. The Union emphasizes that the Grievant had no intent to mislead. OSI never questioned him about the time between when CO Wilkowski pushed the inmate to the wall and when the inmate was taken to the ground.

The Union avers that the Grievant is not guilty of charge 3. Grievant was not the author of the Inmate Misbehavior Report. Grievant signed after the words "Endorsements of other employee witnesses (if any)." The Unions posits that the endorsement does not mean to verify as true and accurate. Grievant's signature signifies approved and /or support for issuing the misbehavior report.

The Union maintains that Grievant is not guilty of charge 4. Grievant allegedly made four untrue statements while being interrogated. The Union challenges the accuracy of the State's account of Grievant's answers during the OSI investigation. Grievant stated his opinion that the inmate was defiant and that the defiance was continuous. Grievant's opinions are not grounds for discipline.

CONFIDENTIAL

MASUCCI000058

The statement that numerous orders were given to Inmate McCane to keep his hands locked behind his back during the strip frisk also expresses an opinion. The alleged false statement to OSI is not even found in the transcript in the Q & A. The statement that the inmate was ordered several times to sit in the BOSS chair is also not in the transcript. Grievant stated he recalled that the inmate was told twice to do the BOSS chair.

The Union contends that Grievant did state he thought the strip frisk was completed. He testified that he saw the bottom of the inmate's feet while on the ground and restraining the inmate. The Union argues that the charges must be dismissed and the Grievant made whole.

## OPINION

The State has the burden of proof. The first set of findings the Arbitrator must make is whether the State has met its burden of proving the charges set forth in the NOD. If the State meets this burden, the appropriate penalty will be addressed. I find that the State has established by a preponderance of the credible evidence that Grievant is guilty of charges 1, 2, and 4 (D), as stated in the February 6, 2018, Notice of Discipline. Grievant is not guilty of charges 3 and 4(A), 4(B) and 4(C).

Grievant is guilty of charge 1. The video evidence shows Grievant entering the strip frisk area after CO Wilkowski drove Inmate McCane into the wall. While CO Wilkowski holds the inmate against the wall, Grievant, using a technique learned in his CERT training, pulls the inmate's legs out from under him causing the inmate to land on the floor. The use of the CERT technique was improper and unnecessary. CO Wilkowski had secured the inmate, and the inmate was not resisting. CO Wilkowski applied a half-nelson and had a forearm to the inmate's back. There was no danger to staff when Grievant pulled the inmate's legs out from under him. Unnecessary force is excessive force.

CONFIDENTIAL

Whether the Grievant's actions caused a specific injury to the inmate is uncertain. Charge 1 contains language that the Grievant's actions injured the inmate's two teeth and left eye socket. The injuries to Inmate McCane's teeth appear to happen when CO Wilkowski drove his face into the wall. However, the video depicts the inmate spitting out blood from his mouth after Grievant pulls him up from the floor. Sometime after Wilkowski drove the inmate into the wall and while the inmate was on the ground, the inmate's left eye socket is fractured. I find that Grievant's actions contributed to the inmate's injuries. I find that Grievant is guilty of charge 1.

Grievant is also guilty of charge 2. Grievant had to be truthful and accurate in his Use of Force Memorandum. He omitted from his Use of Force Memorandum, the actions of CO Bunn. He also minimized the force CO Wilkowski used while exaggerating the inmate's actions to portray the inmate as defiant and challenging. Most important Grievant fails to disclose the amount force he used. Grievant's actions took the inmate to the floor. I find that Grievant's omissions in his Use of Force Memorandum were false and inaccurate and misled the State.

I find that Grievant is not guilty of charge 3. Grievant co-signed the Inmate Misbehavior Report as an endorser/witness. It is not clear what his signature means. The State failed to establish by the credible evidence that it was more likely than not that by signing the Inmate Misbehavior Report that Grievant was attesting to the truth of CO Wilkowski's description of the inmate's behavior. The testimony of DSS Bunn and Grievant were not clear and consistent as to the role of the endorser. DSS Bunn testified that the endorser/witness was the person who witnessed the events and then attests to the truth and accuracy of the report. The Grievant's testimony is that his signature reflects his understanding that the conduct described supports the inmate misbehavior report. I find that the testimony before me is inconclusive as to the purpose

CONFIDENTIAL

MASUCCI000060

of the endorser/witness signature on inmate misbehavior report. Grievant is not guilty of charge 3.

Grievant is also, in part, not guilty of charge 4. The OSI interview resulted in a transcript which does not reflect Grievant's false or inaccurate statements. Grievant answers to specific questions are in the transcript (J.24). Charge 4(A) states:

> You stated, in words or substance, inmate McCane 14B0419 was defiant from the time you opened the door, did not step into the SHU when directed, and continued to look around after ordered to face the wall.

I find that the transcript reflects that Grievant was giving his opinion not fact. Grievant is not guilty of charge 4(A).

Charge 4(B) states: You stated, in words or substance, that numerous orders were given to inmate McCane 14B0419 to keep his hands locked behind his back during the strip frisk.

I find that the transcript of the OSI interrogation does not reflect that Grievant stated that numerous orders were given to Inmate McCane to keep his hands locked behind his back during the strip frisk. The transcript (J.24 at page 23 line 18) records that CO Wilkowski gave the inmate a compound order which included an order to "look straight ahead, follows my commands, and after you take off an article of clothing place your hands behind your back." OSI then asked the Grievant "How many times did Officer Wilkowski have to restate those directions?" Grievant's answer was "numerous." I find that it is unclear whether Grievant's answer was a reference to the direction to keep the inmate's hand locked behind his back or a reference to the other orders. Grievant is not guilty of charge 4(B).

CONFIDENTIAL

MASUCCI000061

Charge 4(C) states: You stated, in words or substance, that inmate McCane 14B0419 was ordered several times to sit in the BOSS chair.

The actual transcript reads Q. And the same with the boss chair, he had to do the boss chair twice? (J.24 p. 15). A. Yes. Q. Is that correct ? A. Yes. Q. Or was it more than twice? A. I only recall twice. I find that the transcript reflects that the Grievant is not guilty of charge 4(C).

Charge 4(D) states: You stated, in words or substance, that to the best of your knowledge the strip frisk of inmate McCane 14B0419 was completed.

The Grievant stated during the interrogation Q. Okay. Was the strip frisk ever completed? A. Yes. Q. It was? A. To my knowledge. Q. Did the inmate show the bottoms of his feet? A. Yes. (J.24 p.32-33). I find that Grievant did give a false and inaccurate statement to OSI investigators. The strip search had not been completed. Two searches remained. The inmate's anus had not been searched, and neither had the soles of his feet. The Grievant stated that the inmate's feet were searched. I find it impossible to believe that while securing the inmate's legs, Grievant inspected the inmate's feet for contraband. This statement to OSI attempted to minimize the staff's lack of attention to completing the search. Grievant is guilty of charge 4(D).

## PENALTY

Having found Grievant guilty of charges 1, 2, and 4(D), I must now address penalty. In addressing penalty, I have considered the Grievant's length of service, the quality of that service, any prior discipline, and attempts at remediation. I have also considered whether the Grievant has acknowledged his wrongdoing, expressed remorse, and accepted that change is necessary for continued employment.

Grievant is a twelve-year DOCCS employee. His service has been excellent. He has no prior discipline. I do not find that Grievant is guilty of egregious misconduct. Grievant was

CONFIDENTIAL

MASUCCI000062

mandated to assist CO Wilkowski. He had a duty to respond but did not respond appropriately. Grievant's misconduct was in using a CERT technique where that technique was improper. Grievant in pulling the inmate's legs from under him used unnecessary and excessive force. Grievant needed to handcuff the inmate, not pull his legs from under him, taking him to the floor. Grievant is also guilty of making false and inaccurate statements in his Use of Force Memorandum. I believe his false statements minimized the staff's involvement and maximized the inmate's culpability. Making a false and inaccurate statement is serious misconduct. The false statements to OSI, reflect Grievant's attempt to justify his statement that the search was completed.

I find that given all the circumstances the appropriate penalty is a three (3) month suspension without pay. Even though the Grievant expressed no recognition of wrongdoing, his twelve years of excellent service with no prior discipline and the fact that he was mandated to respond, mitigate against a more severe penalty. Grievant may not use his accrued leave to cover his period of suspension. Grievant is awarded backpay and benefits for the period of suspension which exceeds three (3) months.

### SUSPENSION

I find that the State had probable cause to suspend Grievant on February 6, 2018. The video and interview with the inmate supported the Grievant's suspension. If the allegations were true, Grievant's continued presence was a potential danger to persons and property or would severely interfere with the facility's operations.

Accordingly, and based on the foregoing, the Arbitrator finds and makes the following:

CONFIDENTIAL

MASUCCI000063

## AWARD

1. Grievant is guilty of charges 1, 2, and 4(D) of the February 6, 2018, NOD.

2. Grievant is not guilty of charges 3 and 4(A), 4(B), and 4(C) of the February 6, 2018 NOD.

3. The appropriate penalty is a three (3) month suspension without pay.

4. Grievant may not use his accrued annual leave to cover this period of suspension.

5. Grievant is awarded back pay and benefits for the period of his suspension that exceeds three (3) months.

6. Grievant's suspension on February 6, 2018, was consistent with Article 8.4 (a)(1) of the Collective Bargaining Agreement.

Dated:  January 30, 2019

Albany, New York

Timothy S. Taylor, Esq.
ARBITRATOR

## AFFIRMATION

STATE OF NEW YORK)
COUNTY OF ALBANY).:ss

I, Timothy S. Taylor, do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

Dated:  January 30, 2019

Albany, New York

Timothy S. Taylor, Esq.
ARBITRATOR

CONFIDENTIAL

MASUCCI000064