# Exhibit H

```
 1
 2   UNITED STATES DISTRICT COURT
     WESTERN DISTRICT OF NEW YORK
 3   ------------------------------------------X
     DAVID MCCANE,
 4
                                    PLAINTIFF,
 5
              -against-          Case No.:
 6                               18-CV-01489-EAW-JJM

 7   CORRECTION OFFICERS D. WILKOWSKI,
     MASUCCI, T. BUNN, FLINCH, HILLMAN,
 8   and SERGEANT APPLEBERRY, in their
     individual capacities,
 9
                                    DEFENDANTS.
10   ------------------------------------------X

11

12                  DATE: August 26, 2022

13                  TIME: 3:11 P.M.

14

15

16        VIRTUAL EXAMINATION BEFORE TRIAL

17   of a Non-Party Expert Witness, MICHAEL

18   JUSTIN PERSKY, M.D., taken by the

19   Defendants, pursuant to a Subpoena, held at

20   the above date and time, before Dara

21   Sanoff, a Shorthand Reporter and Notary

22   Public for and within the State of New

23   York.

24

25
```

```
 1
 2    A P P E A R A N C E S:
 3
 4    CAITLIN ROBIN & ASSOCIATES, PLLC
         Attorneys for the Plaintiff DAVID MCCANE
 5       and for Expert Witness MICHAEL JUSTIN
         PERSKY, M.D. for purposes of the
 6       deposition
         737 Main Street, Suite 201
 7       Buffalo, New York 14203
         BY: CAITLIN ROBIN, ESQ.
 8       caitlin@robinandassociates.com
 9
10    MEYERS BUTH LAW GROUP, PLLC
         Attorneys for the Defendant
11       D. WILKOWSKI
         21 Princeton Place
12       Orchard Park, New York 14127
         BY: LAURIE A. BAKER, ESQ.
13       Abaker@mblg.us
14
15    LIPSITZ GREEN SCIME CAMBRIA LLP
         Attorneys for the Defendant
16       MASUCCI
         42 Delaware Avenue, Suite 120
17       Buffalo, New York 14202
         BY: PATRICK J. MACKEY, ESQ.
18       pmackey@lglaw.com
19
20
21
22
23
24
25    (APPEARANCES CONTINUED ON FOLLOWING PAGE)
```

```
 1

 2    A P P E A R A N C E S:

 3

 4    LIPPES MATHIAS WEXLER FRIEDMAN LLP
         Attorneys for the Defendant
 5       T. BUNN
         50 Fountain Plaza, Suite 1700
 6       Buffalo, New York 14202
         BY: CAITLYN O'NEIL, ESQ.
 7       coneil@lippes.com

 8

 9    OFFICE OF THE ATTORNEY GENERAL
         Attorneys for the Defendant
10       HILLMAN
         Main Place Tower
11       350 Main Street, Suite 300A
         Buffalo, New York 14202
12       (NOT PRESENT)

13

14

15

16              *         *         *

17

18

19

20

21

22

23

24

25
```

## 221. UNIFORM RULES FOR THE CONDUCT OF DEPOSITIONS

221.1 Objections at Depositions

(a) Objections in general. No objections shall be made at a deposition except those which, pursuant to subdivision (b), (c) or (d) of Rule 3115 of the Civil Practice Law and Rules, would be waived if not interposed, and except in compliance with subdivision (e) of such rule.  All objections made at a deposition shall be noted by the officer before whom the deposition is taken, and the answer shall be given and the deposition shall proceed subject to the objections and to the right of a person to apply for appropriate relief pursuant to Article 31 of the CPLR.

(b) Speaking objections restricted. Every objection raised during a deposition shall be stated succinctly and framed so as not to suggest an answer to the deponent and, at the request of the questioning attorney, shall include a clear statement as to any defect in form or other basis of error or irregularity.  Except to the extent permitted by CPLR Rule 3115 or by this rule, during the course of the examination persons in attendance shall not make statements or comments that interfere with the questioning.

221.2 Refusal to answer when objection is made. A deponent shall answer all questions at a deposition, except (i) to preserve a privilege or right of confidentiality, (ii) to enforce a limitation set forth in an order of the court, or (iii) when the question is plainly improper and would, if answered, cause significant prejudice to any person.  An attorney shall not direct a deponent not to answer except as provided in CPLR Rule 3115 or this subdivision. Any refusal to answer or direction not to answer shall be accompanied by a succinct and clear statement of the basis therefor. If the deponent does not answer a question, the examining party shall have the right to complete the remainder of the deposition.

```
 1

 2                221. UNIFORM RULES FOR THE
                    CONDUCT OF DEPOSITIONS
 3
     221.3 Communication with the deponent
 4          An attorney shall not interrupt the
     deposition for the purpose of communicating
 5   with the deponent unless all parties
     consent or the communication is made for
 6   the purpose of determining whether the
     question should not be answered on the
 7   grounds set forth in section 221.2 of these
     rules and, in such event, the reason for
 8   the communication shall be stated for the
     record succinctly and clearly.
 9

10           IT IS FURTHER STIPULATED AND AGREED
     that the transcript may be signed before
11   any Notary Public with the same force and
     effect as if signed before a clerk or a
12   Judge of the court.

13
             IT IS FURTHER STIPULATED AND AGREED
14   that the examination before trial may be
     utilized for all purposes as provided by
15   the CPLR.

16
             IT IS FURTHER STIPULATED AND AGREED
17   that all rights provided to all parties by
     the CPLR cannot be deemed waived and the
18   appropriate sections of the CPLR shall be
     controlling with respect hereto.
19

20           IT IS FURTHER STIPULATED AND AGREED
     by and between the attorneys for the
21   respective parties hereto that a copy of
     this examination shall be furnished,
22   without charge, to the attorneys
     representing the witness testifying herein.
23

24

25
```

```
 1                  M. PERSKY, M.D.
 2    M I C H A E L   J U S T I N   P E R S K Y,
 3    M.D., called as a witness, having been
 4    first duly sworn by a Notary Public of the
 5    State of New York, was examined and
 6    testified as follows:
 7              THE COURT REPORTER:  Please
 8         state your name for the record.
 9              THE WITNESS:  Dr. Michael
10         Justin Persky.
11              THE COURT REPORTER:  What is
12         your business address?
13              THE WITNESS:  160 East 34th
14         Street, 9th Floor, New York, New York
15         10016.
16    EXAMINATION BY
17    MS. O'NEIL:
18         Q.    Dr. Persky, good afternoon.
19         A.    Hi.
20         Q.    My name is Caitlyn O'Neil.  I
21    represent a Defendant named Timothy Bunn
22    and we're here to ask you some questions
23    about your expert review of this case.
24    Have you ever given a deposition before?
25         A.    I have not, no.
```

1                M. PERSKY, M.D.
2        Q.    Okay, thank you.  Pain on his
3   tongue.  Can you tell me more about this
4   aspect of this complaint?
5        A.    He described, you know, that
6   his tongue was uncomfortable and painful
7   and there was a permanent ball on his
8   tongue on the left side.
9        Q.    Did you say bulge?
10       A.    Ball.  I think that's the
11  language he used.
12       Q.    Did you observe any
13  disfiguration on his tongue?
14       A.    The scar.
15       Q.    Did you observe the ball on his
16  tongue?
17       A.    No.  I wouldn't expect to be
18  able to observe that.
19       Q.    Why not?
20       A.    Over video you can't really get
21  sense of balls and tongues.  You know, it's
22  not like a surface problem.  It sounded
23  like a deeper problem.
24       Q.    So you would have to perform a
25  physical assessment to --

```
 1                    M. PERSKY, M.D.
 2        A.    Exactly.  Yeah, you have to
 3   touch that.
 4        Q.    The next complaint on paragraph
 5   3 is trismus.  Did Mr. McCane tell you that
 6   was his complaint?  Did he use that word?
 7        A.    Can you please repeat that?
 8        Q.    Did Mr. McCane use the word
 9   trismus?
10        A.    No.
11        Q.    What did he tell you?
12        A.    He can't open his mouth as wide
13   as he could before the incident.
14        Q.    Did you assess this complaint?
15        A.    Yes.
16        Q.    What did you do?
17        A.    I asked him to open his mouth.
18        Q.    And what did you observe?
19        A.    Yeah, he could open his mouth,
20   but I couldn't see how wide he could open
21   his mouth before, but he was opening his
22   mouth okay.
23        Q.    And so did you form an opinion
24   as to whether he was suffering from
25   trismus?
```

1                    M. PERSKY, M.D.
2         A.    No.
3         Q.    And then the last is issues
4    with muscle mastication that is affecting
5    his eating.  Did he use the phrase muscle
6    mastication?
7         A.    No.
8         Q.    What did he tell you?
9         A.    Chewing.
10        Q.    And what did he tell you?
11        A.    He just said that he's had pain
12   in his mouth and it hurts -- it hurts when
13   he chews and he's been taking ibuprofen for
14   it.
15        Q.    Did you ask him any questions
16   about the nature or location of the pain
17   when he chews?
18        A.    Not that I can see from my
19   notes.
20        Q.    Do you know whether that was
21   jaw pain or tooth pain or some other pain?
22        A.    He said -- he specifically did
23   say that his tongue and his teeth hurt.
24        Q.    What does muscle mastication
25   mean to you?  Is it just the mechanism of

MICHAEL JUSTIN PERSKY, M.D.                                              JOB NO. 326539
AUGUST 26, 2022

```
 1                    M. PERSKY, M.D.
 2    chewing or the --
 3         A.    Yeah.
 4         Q.    So the next paragraph,
 5    paragraph 4 under the heading document
 6    review, you note that you reviewed
 7    photographs of his injuries.  What
 8    photographs were those?
 9         A.    Whatever was given to me.
10         Q.    Do you have a recollection as
11    to like when the photographs were taken?
12    Was he in the correctional facility or --
13         A.    I don't have that recollection
14    now.
15         Q.    And the last sentence in that
16    paragraph you write, "My review of the
17    records corroborated with the injuries the
18    Plaintiff suffered from the assault."  What
19    does that mean?
20         A.    It meant that everything
21    matched up.  His -- the assault that I
22    witnessed on the video and the injuries
23    that were described and recorded by -- on
24    imaging all matched.
25         Q.    And what were the injuries
```

```
 1                    M. PERSKY, M.D.
 2    described and recorded on imaging?
 3          A.    The orbital floor fracture and
 4    the lamina papyracea fracture.
 5          Q.    When you say they matched what
 6    do you mean?
 7          A.    It's -- well, watching his face
 8    hit the wall and then seeing a CT scan of
 9    broken orbital floor and a lamina
10    papyracea, one could clearly lead to the
11    others -- could lead to those injuries.
12          Q.    So is it your opinion that the
13    impact with the wall caused the fractures
14    to his face?
15          A.    It's my opinion impact with the
16    wall could have caused those fractures to
17    his face quite certainly, yes.  I couldn't
18    see what happened after he was on the
19    floor, so maybe something else happened.  I
20    don't know.
21          Q.    Could a traumatic injury before
22    his face hit the wall have caused those
23    injuries?
24          A.    Well, I'm not sure -- can you
25    -- can you rephrase that question?
```

1                  M. PERSKY, M.D.
2        Q.    Could impact with a hard
3   surface at any time before January 13th,
4   2018 have caused those injuries?
5        A.    Not too far before, no.
6              MS. ROBIN:  And you have no
7         offer of proof as to any other
8         incident, correct, Caitlyn?
9              MS. O'NEIL:  I don't know.  I'm
10        just trying to --
11             MS. ROBIN:  There is none.
12             MS. O'NEIL:  I'm trying to --
13             MS. ROBIN:  For the record,
14        there is no attack before or after.
15       A.    And to be clear there is air in
16  the orbit on the CT scan, which would mean
17  that whatever fracture happened, happened
18  very soon before that CT scan was taken.
19       Q.    How long does air remain in the
20  orbit after fracture?
21       A.    I mean I don't know exactly,
22  but I would -- I would think no longer
23  than, you know, a week or so.
24       Q.    Turning to the next page of
25  your report, page 5.  On paragraph 6 you

```
 1                  M. PERSKY, M.D.
 2   wrote, "Upon examination, I observed that
 3   the Plaintiff suffered facial injuries
 4   including a left lamina papyracea
 5   fracture."  What did you observe of that
 6   fracture?
 7            MS. ROBIN:  I'm sorry, what was
 8       the question?
 9       Q.    How did you observe this
10   fracture?
11       A.    The CT scan.
12       Q.    So when it says "upon
13   examination," you're referring to the CT
14   scan?
15       A.    Right.  Eye exam.  It should
16   say that -- yeah.  I mean it's a kind of
17   sloppy sentence to read clear.  But yes,
18   you -- you -- you see it on the CT scan, so
19   examination of the CT scan.
20       Q.    And is the reference to
21   residual tenderness and pain that you note
22   in that paragraph the orbital pain that you
23   described earlier why?
24       A.    Yeah.  Yes.
25       Q.    And then the last part of the
```