# Exhibit J

1                           J. ROURKE

2    preparation for writing this report; correct?

3         **A.   Correct.**

4         Q.   What did you view on the video tape

5    that you believe -- let me back up.

6              Officer Wilkowski pinned David

7    McCane up against the wall; correct.

8         **A.   Yes.**

9         Q.   In fact, in the review of the

10   videotape, would you agree with me that he

11   slammed him up against the wall?

12        **A.   He pinned him against the wall, I**

13   **would say.**

14        Q.   In fact, there was blood as a result

15   of that; correct?

16        **A.   Yes.**

17        Q.   Would you agree with me that was an

18   excessive use of force?

19        **A.   No.   I wouldn't agree with that.**

20        Q.   What was the reason Officer

21   Wilkowski pinned him up against the wall?

22        **A.   I actually don't know.   I don't have**

23   **any idea.**

24        Q.   If Officer Wilkowski did not have a

25   legal or justifiable reason to pin an inmate,



```
 1                    J. ROURKE
 2   that would be an improper use of force;
 3   correct?
 4             MR. MACKEY:  Object to form.
 5      A.  I don't know what he perceived as a
 6   threat.  That doesn't mean there wasn't one.
 7      Q.  If there is no perceived threat,
 8   there is no reason to use force; correct?
 9             MR. MACKEY:  Object to form.
10             THE WITNESS:  Do I answer?
11             MR. MACKEY:  Yes.
12      A.  He's behind half a wall.  I can't
13   see the inmate's actions.  I don't know what
14   Officer Wilkowski is actually looking at.  I
15   got there.  If, in fact, he perceived a
16   threat, he used force to stop the threat.  I
17   can't say what the threat was.
18      Q.  If there was no threat, he shouldn't
19   use force; correct?
20             MR. MACKEY:  Object to form.
21      A.  I don't know what he saw, so
22   therefore --
23      Q.  I'm asking you a hypothetical.  If
24   there is no threat, is an officer allowed to
25   use force?
```

```
 1                    J. ROURKE
 2            MR. MACKEY:  Object to form.
 3       He's here for facts, not
 4       hypotheticals.
 5            MS. ROBIN:  He can answer the
 6       question.  Your objection is noted.
 7            MR. MACKEY:  Okay.
 8       A.   In any situation -- not the one we
 9    are talking about -- if there is no threat,
10    you don't use force.
11       Q.  In fact, under the Department
12    guidelines, I believe you said you reviewed
13    Directive 4944; correct?
14       A.   Right.
15       Q.  You are supposed to use the least
16    amount of force necessary to control a
17    situation; correct?
18       A.   That's correct.
19       Q.  In your review of the video, at any
20    point, do you see David McCane making a fist?
21       A.   No.
22       Q.  In your review of this file, can you
23    please tell me what documents you reviewed in
24    preparing the report?
25       A.   Well, 4944, as you already
```

```
 1                     J. ROURKE
 2    mentioned.  I reviewed the -- a few times, I
 3    looked at the video.  And to me, for my
 4    experience, the video is kind of
 5    self-explanatory.  After reading the use of
 6    force directive, there wasn't really anything
 7    else to look at.  I did look at all the
 8    transcripts of the officers involved, the
 9    staff involved, the examination of
10    Mr. McCane.  I read all that.  I looked at
11    his medical, quite lengthy amount of
12    paperwork.  The actual video itself is kind
13    of, to me, open and shut, but I read all
14    those documents and found out what his
15    injuries were, and stuff like that.
16        Q.  Were you ever provided the New York
17    State Corrections Community and Supervision
18    notice of discipline to review?
19        A.  No.
20        Q.  Were you ever provided the decision
21    of the arbitrator in this case regarding
22    Officer Masucci?
23        A.  I don't think that was included.  I
24    think I just was his examination -- question
25    and answer kind of situation.  I don't
```



1                          J. ROURKE

2     **believe I saw a notice of discipline.**

3          Q.   If you saw an arbitrator's review

4     and findings, would that potentially change

5     your opinion as to whether Officer Masucci

6     used appropriate force?

7          **A.   No.**

8          Q.   In your role at Auburn, were you

9     ever in a position to implement discipline

10    against correction officers?

11         **A.   Did I ever discipline correction**

12    **officers?  Is that your question?**

13         Q.   Yes.

14         **A.   I have used -- yes, I have**

15    **disciplined correction officers.  Yes.**

16         Q.   Is your role as an officer -- and

17    looking at your history, it appears you are a

18    retired corrections captain; correct?

19         **A.   Correct.**

20         Q.   Correct me if I'm wrong -- you had

21    the position of captain for approximately

22    11 years?

23         **A.   That's correct.**

24         Q.   In your role in corrections as a

25    captain, what responsibilities would you have

1                            J. ROURKE

2    officers?

3        **A.   Counsel and then recommend.   The**

4    **superintendent of a correctional facility, if**

5    **I recommended it, it would go to the**

6    **superintendent.   The superintendent would**

7    **then contact labor relation, and then -- they**

8    **got a new name now.   They used to just be**

9    **called the Inspector General, but the**

10   **Inspector General would take it from there.**

11   **It's got a new name now.   I can't think of**

12   **the name of it.   Special something or other.**

13       Q.   In your 11 years as a captain,

14   approximately how many officers did you

15   supervise in your role?

16       **A.   As the captain, I had 835 correction**

17   **officers, 40 sergeants, and 10 lieutenants.**

18       Q.   During your 11 years, how many

19   officers did you forward with a

20   recommendation for discipline?

21       **A.   Probably -- I never kept track.**

22   **Probably maybe a dozen for different**

23   **offenses.**

24       Q.   That's 12 over a period of time of

25   11 years?



1                       J. ROURKE

2      **A.   Correct.**

3      Q.   Did you ever make a recommendation

4   for discipline in relation to excessive use

5   of force during your time as captain?

6      **A.   No.**

7      Q.   Is it your position that in the

8   11 years you were a captain of over 835

9   officer in Auburn, you never witnessed an

10   excessive use of force that you would have

11   recommended discipline?

12      **A.   Nothing that ever came across my**

13   **desk, no.**

14      Q.   Do you know who your successor was

15   in your position?

16      **A.   I do.**

17      Q.   Who was it?

18      **A.   Timothy McCarthy.**

19      Q.   Is Timothy still in this position?

20      **A.   No.   He retired as superintendent.**

21      Q.   Your last line of your expert report

22   says, "It is my opinion within a reasonable

23   degree of certainty that CO Masucci acted

24   appropriately and in compliance with the

25   Department of Correction's use of force

1                     J. ROURKE

2     guidelines."  That's in Plaintiff's

3     Exhibit 1.  What Department of Corrections

4     use of force guidelines are you referring to?

5          **A.   The directive.   4944.**

6          Q.   Directive 4944, where is that

7     maintained, and how is that maintained?

8          **A.   I don't understand that one.**

9          Q.   How does one come across Directive

10    4494 (sic)?

11         **A.   Well, it's in the operations manual**

12    **for every correctional facility.**

13              MR. MACKEY:  Can we clarify?

14         It's 4944.

15              MS. ROBIN:  I apologize.  I got

16         the number wrong.

17         Q.   Does that have more than one rule

18    within the directive?

19         **A.   I don't think I understand that one.**

20         Q.   Is the directive one rule, is it a

21    guidebook?  What is the directive?

22         **A.   The directive is -- well, actually,**

23    **it's signed into law by the State as part of**

24    **correction law.  It's the law.  It's not --**

25    **it's expected to be followed.**



1                          **J. ROURKE**

2         Q.   What portion of Directive 4494 did

3    Officer Masucci follow?

4                   MR. MACKEY:   4944.

5                   MS. ROBIN:   Sorry.

6         **A.   He followed using force to protect**

7    **himself or a third party from physical harm.**

8    **And that's exactly what I thought he did.**

9         Q.   What does that rule state under that

10   directive, 4944?

11        **A.   It certainly states the use for**

12   **physical force, and one of the reasons for**

13   **the use of physical force is to protect**

14   **yourself or a third person from -- from harm.**

15   **So that's what I believe he was doing with**

16   **regard to the other officer.**

17        Q.   Mr. Rourke, it appears you were

18   reading from something.  Were you?

19        **A.   No.   This is -- I got -- I have the**

20   **directive.   Okay?   And I have my statement.**

21   **That's the only two pieces of paper I got.**

22                   MS. ROBIN:   I'll call for

23           production of the directive that

24           Mr. Rourke relied on in preparation

25           of his report, the version of it.



1                              J. ROURKE

2          Q.  In using force to protect yourself

3    or another officer, there has to be a viable

4    and real threat; correct?

5          **A.  Yes.**

6          Q.  Otherwise, the use of force to

7    protect yourself or another officer is not

8    allowed; correct?

9          **A.  That is right.**

10         Q.  I'm going to take you to the

11   deposition of Officer Wilkowski.  You had the

12   opportunity to review this; correct?

13         **A.  Yes, I did.**

14         Q.  I'm going to direct to you page 51

15   of the transcript of Officer Wilkowski.  If

16   you want, I can pull it up on my screen, or I

17   can read it.  I will do both.

18              MR. MACKEY:  If you could.

19         Q.  Page 51, "Question:  What is Officer

20   Masucci doing there, and what are you doing

21   there?"  And the record reflects that the

22   video of the incident is being played.

23              And Officer Wilkowski answers, "He

24   is pulling his leg out and I have my hand on

25   his elbow, I believe, and his wrist, and then

```
 1                    J. ROURKE
 2    we all went to the floor.
 3         "Question:  Why did you end up on
 4    the floor?
 5         "Answer:  Because Masucci pulled the
 6    inmate's legs out from underneath him.
 7         "Question:  Did you believe that to
 8    be an appropriate response of force?
 9         "Answer:  No.
10         "Question:  Why not?
11         "Answer:  We didn't need to take
12    that inmate to the floor.  We could have
13    handcuffed him on the wall.
14         "Question:  Why do you say that?
15         "Answer:  I mean, it could have
16    speculated and we ended up on the floor, but
17    in my opinion and from experience, with the
18    two of us or even the three of us, we could
19    have just held him against the wall and
20    handcuffed him."
21         Mr. Rourke, did you review that
22    testimony?
23         A.  Yes.
24         Q.  Would you agree with me that Officer
25    Masucci's actions were purportedly to protect
```

Reporter's Ink, Corp.    Phone : 646.395.2522    Fax : 212.374.1236    www.reporters-ink.com



```
 1                      J. ROURKE
 2   Officer Wilkowski; correct?
 3        A.  Yes.
 4        Q.  If Officer Wilkowski said that
 5   Officer Masucci used improper force, does
 6   that change your opinion whether improper
 7   force was used?
 8        A.  No.
 9        Q.  If Officer Wilkowski felt that they
10   could have handcuffed him while standing and
11   there was no need to take him to the floor,
12   what, if anything, does that do to change
13   your opinion about whether Officer Masucci's
14   actions in clearing out his legs to slam him
15   to the floor was appropriate?
16             MR. MACKEY:  Object to form.
17        A.  It doesn't change my opinion at all.
18        Q.  Why?
19        A.  This is Wilkowski's testimony of
20   what he felt.  He doesn't know what's going
21   through Masucci's mind when Masucci sees the
22   incident of him being put against the wall,
23   so he can't speak for Masucci.  He don't know
24   what Masucci is looking at.
25        Q.  Would you agree with me that
```



```
 1                    J. ROURKE
 2    Directive 4944 says you should use the least
 3    amount of force as reasonably possible;
 4    correct?
 5        A.  Correct.
 6        Q.  If you have the opportunity to
 7    handcuff an inmate rather than slam him on
 8    the floor, you should handcuff the inmate
 9    while standing under Directive 4944; correct?
10             MR. MACKEY:  Object to form.
11        A.  In the split second you have to make
12    that decision, I would say that he thought
13    getting him to the floor would neutralize the
14    problem, so I agree with Masucci's actions in
15    this case.
16        Q.  If Wilkowski said that they could
17    have handcuffed him instead of taking him to
18    the floor, handcuffing would be lesser use of
19    force than taking the inmate to the floor;
20    correct?
21        A.  That's because Wilkowski -- these
22    names are tough -- Wilkowski is closer.  He
23    knows what is going on, and Masucci does not.
24        Q.  My question is, would handcuffing
25    the inmate while standing have been a lesser
```



```
 1                    J. ROURKE
 2    use of force than taking an inmate to the
 3    ground?
 4        A.  Yes, if you could do it.  Yes, it
 5    would be.
 6        Q.  I'm going to take you to page 74 of
 7    the testimony.  On page 73 of Officer
 8    Wilkowski's testimony, this was the
 9    question --
10            MR. MACKEY:  73, or 74?
11            MS. ROBIN:  73, and I'm going
12         to go into 74.  It starts on page 73,
13         line 22.
14        Q.  "Question:  You said that you know
15    that day you guys, everybody in the room
16    realized something was wrong.  What do you
17    mean by that?
18            "Answer:  We believe that use of
19    force was inappropriate.
20            "Question:  When you say 'use of
21    force,' you meant what Officer Masucci used?
22            "Answer:  Yes.
23            "Question:  Who did you talk about
24    that with?
25            "Answer:  It's been a long time, but
```

```
 1                    J. ROURKE
 2    I'm pretty sure I talked to everybody that
 3    was in that room about it.
 4            "Question:  Did -- sorry.  Did you
 5    talk to Officer Masucci that you felt what he
 6    did was wrong?
 7            "Answer:  Yeah.
 8            "Question:  Did you feel that you
 9    guys were going to get in trouble for it?
10            "Answer:  To be honest with you, we
11    all thought Dino was going to get in a lot of
12    trouble.  That's why it never was brought up.
13    We never asked.  We never said anything.
14            "Question:  Were you surprised when
15    you got into a lot of trouble?
16            "Answer:  Yes."
17            Mr. Rourke, you were a captain for
18    many years in Auburn; correct?
19       A.  That's correct.
20       Q.  If your officers underneath you, who
21    all witnessed and were present for a
22    situation, let you know that they felt one of
23    their fellow officers had used inappropriate
24    use of force, would you generally disagree
25    with their opinion about what had occurred?
```

1               J. ROURKE

2               MR. MACKEY:  Object to form.

3        **A.   Unrelated to this, if somebody**

4    **brought that to my attention?  I would have**

5    **to bump up to the superintendent.**

6        Q.   Do you think that officers are

7    capable of identifying when a fellow officer

8    uses inappropriate force?

9        **A.   Yes.**

10       Q.   Under department guidelines, if an

11   officer sees another officer using

12   inappropriate force, do they have a duty to

13   intervene?

14       **A.   They do.**

15       Q.   Officer, reading this testimony

16   about Officer Wilkowski and his fellow

17   officers' opinion of what occurred that day,

18   does it change your opinion as to whether

19   Officer Masucci used appropriate force?

20       **A.   It doesn't.  No.**

21       Q.   Why not?

22       **A.   I still say from what -- from**

23   **viewing the video many times, is that Masucci**

24   **didn't know what was going on with regard to**

25   **the incident with Wilkowski.  He felt that**



1                          J. ROURKE

2          **A.   Yes, he was.**

3          Q.   In fact, after a hearing, it was

4     determined that he used excessive physical

5     force; correct?

6          **A.   Correct.**

7          Q.   Specifically, the hearing found that

8     he had violated section 2.2, 2.23, 7.9, and

9     9.2 of the DOCCS Directive 4944, "Use of

10    Physical Force."  Correct?

11         **A.   That's what it says, yes.**

12         Q.   As a result of that excessive force,

13    Mr. McCane suffered injuries "including, but

14    not limited to, four broken teeth and

15    fracture of his left eye socket."  Correct?

16         **A.   Correct.**

17         Q.   Not only that, but according to this

18    notice of discipline, Officer Masucci was

19    convicted or was disciplined because he

20    submitted a false report about it; correct?

21         **A.   That's what this -- yes, this**

22    **document says that.**

23         Q.   In fact, it says that he "submitted

24    a Use of Force Memorandum in which he failed

25    to accurately report the reason for the use



1                        J. ROURKE

2    of physical force and/or the amount of force

3    that was used."  Correct?

4        **A.   Correct.**

5        Q.   Based upon this discipline, the

6    department, in its own investigation, found

7    that Mr. Masucci used excessive force;

8    correct?

9        **A.   That's what it says, yes.**

10       Q.   That it caused Mr. McCane's

11   injuries; correct?

12       **A.   That's what this says, yes.**

13       Q.   And that he lied about it

14   afterwards; correct?

15       **A.   That's what it says, yes.**

16       Q.   As you sit here today, four years

17   after the event and without ever having

18   interviewed Mr. Masucci, what causes you to

19   believe that the government and DOCCS, in its

20   own investigation, got it wrong?

21            MR. MACKEY:  Object to form.

22       **A.   I read his use of force, and**

23   **compared his use the force to the video I**

24   **watched.  I didn't see any lies in it.  He**

25   **said exactly what he did.  Nobody tried to**

```
 1                      J. ROURKE
 2    hide Mr. McCane's injuries.  There is reams
 3    of paperwork on exactly what physical force
 4    was used and the injuries that he received.
 5    I don't see where he lied.
 6           And again, the reason for the
 7    physical force used by Masucci was in direct
 8    -- directly caused by Wilkowski's actions
 9    with McCane.  So if there was no threat, you
10    can't hold that against Masucci because he's
11    outside where he can see Mr. McCane.
12       Q.  If there was no threat and Wilkowski
13    attacked Mr. McCane, Officer Masucci had a
14    duty to intervene; correct?
15           MR. MACKEY:  Object to form.
16       A.  Mr. Masucci, by the testimony of the
17    inmate, stated that he couldn't see Masucci
18    and Masucci couldn't see him.  So therefore,
19    he can only react what Wilkowski is doing,
20    and when he sees Wilkowski react, then he
21    reacts.  The lie, if there is a lie, I didn't
22    see it in use of force with regards to
23    Masucci, and I didn't see it in the video.
24       Q.  Well -- I'm sorry.  Are you done?  I
25    didn't mean to interrupt.
```

1                          J. ROURKE

2         **A.   Yes, ma'am.**

3         Q.   Officer Wilkowski's purported reason

4    for pinning Mr. McCane up against the wall

5    was that he made a fist.  However, you had

6    previously stated that there is no depiction

7    of Mr. McCane making a fist on the video;

8    correct?

9         **A.   There is no way I could see whether**

10   **he made a fist.**

11        Q.   There is no fist on the video?

12        **A.   I didn't see a fist on the video,**

13   **and I can't see anything of Mr. McCane from**

14   **about chest down.**

15        Q.   In reviewing this file, you are

16   aware that Officer Masucci was represented by

17   the union at the time of his hearing;

18   correct?

19        **A.   I'm sure he was, yes.**

20        Q.   There were three days for testimony;

21   correct?

22        **A.   Yes.**

23        Q.   All of the findings supported

24   discipline.  And in fact, if you go to page

25   29, it specifically says that he co-signed an



```
 1                    J. ROURKE
 2    Inmate Misbehavior Report in which was stated
 3    that Mr. McCane was uncooperative in failing
 4    to follow several direct orders, and when
 5    told to turn and face the wall" --
 6              MS. ROBIN:  Hang on one second.
 7         Sorry.
 8              (Whereupon, a brief pause was
 9         taken.)
10              MR. MACKEY:  Which paragraph
11         are you looking at?
12              MS. ROBIN:  Page 29, the Bates
13         stamp is Masucci 41, and I'm looking
14          at paragraph three.
15    Q.  Let me rephrase this.
16              Officer, would you agree with me at
17    the hearing that DOCCS did to investigate
18    Officer Masucci's discipline, that they found
19    that it was false and inaccurate when Officer
20    Masucci reported that Mr. McCane was
21    uncooperative, and that he failed to turn and
22    face the wall, and that he made a fist?
23    A.  This was in a misbehavior report?
24    Q.  It's in the disciplinary findings
25    from Officer Masucci's hearing.  If you want
```

